## THE FRED E. SANDER.

(District Court, W. D. Washington, N. D. October 20, 1913.)

No. 2,540.

1. SEAMEN (§ 29*)—WORKMEN'S COMPENSATION ACT—SCOPE—JURISDICTION OF ADMIRALTY COURTS.

The Workmen's Compensation Act (Laws Wash. 1911, c. 74) which abolishes civil actions for the recovery of damages by workmen for personal injuries received on account of negligence of employers, does not withdraw from a workman injured while employed on a vessel his remedy by proceeding in rem in admiralty against the vessel to enforce the lien given by the maritime law for his injury.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. § 29.*]

2. ADMIRALTY (§ 1*)—JURISDICTION—EFFECT OF STATE STATUTE.

A state is without power to abolish or limit the jurisdiction of courts of admiralty over maritime torts conferred by the Constitution.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 1–17; Dec. Dig. § 1.*]

In Admiralty. Suit by John A. Thompson against the sailing schooner Fred E. Sander. On exceptions to libel. Exceptions overruled.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

S. A. Bostwick and J. Y. Kennedy, both of Everett, Wash., for libelant.

Ballinger, Battle, Hulbert & Shorts, of Seattle, Wash., for claimant.

NETERER, District Judge. This is an action in admiralty against the schooner Fred E. Sander for personal injuries sustained by the plaintiff November 15, 1912, at Everett, Wash., while employed by the master in loading and storing away piling in the hold of the schooner. The libel alleges that the Fred E. Sander is a sailing schooner, plying between the port of San Francisco and Puget Sound points, in the state of Washington, and that the schooner is within the jurisdiction of the court. Damages in the sum of $5,000 are alleged to have been caused libelant by reason of the negligence of the owners and those in charge of the schooner; and the prayer is "that the said vessel be condemned and sold to pay libelant's claim and costs." The libel was filed August 29, 1913, and the schooner attached by the United States Marshal August 30th following. On September 6th George E. Billings intervened in said action and, as agent of the owners, made claim to the schooner, her tackle, apparel, furniture, etc., and prayed "to defend accordingly." On the same day a stipulation for costs was filed by the claimant, as was also a bond for the release of the vessel.

[1] On September 19th the claimant filed exceptions to the libel, in which it is alleged that the Legislature of Washington had passed an act, known as the "Workmen's Compensation Act," which took effect as between employers and workmen on October 1, 1911, and:

"That this court is without jurisdiction to entertain, hear or determine this action, for the reason that all actions and causes for such personal injuries, and the jurisdiction of courts over such cases, were and are expressly abolished by said act, which act provides sure and certain relief and compensation for such injured workmen, regardless of questions of fault, and to the exclusion of every other remedy, proceeding, or compensation."

The Workmen's Compensation Act (chapter 74, Laws of Washington 1911), declares:

"Section 1. The common-law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the workman and that little only at large expense to the public. The remedy of the workman has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wageworker. The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in extra hazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided."

Stoll v. Pacific Coast Steamship Co. (D. C.) 205 Fed. 169, decided by District Judge Cushman, is cited in support of the objection to the

court's jurisdiction. In that action the constitutionality of the Washington Workmen's Compensation Act was attacked. That was not an action in admiralty, but was an action where the plaintiff sought to enforce a common-law remedy against the owner of the vessel on which he received his injury, and the court's jurisdiction was based upon diversity of citizenship. Judge Cushman adopted the view of the Washington Supreme Court in State ex rel. Davis-Smith v. Clausen, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, as to the constitutionality of the act. The Stoll Case is distinguishable from this, in that this is an action in admiralty where the injured party has elected to pursue his remedy against the vessel rather than enforce a common-law liability against the owners of the vessel. The issue here is: Does the state act abolishing civil actions for the recovery of damages by workmen for personal injuries received on account of negligence of employers supersede all remedies and withdraw from workmen their remedy to proceed against the vessel in admiralty for the wrong sustained?

That a person injured within the admiralty jurisdiction has a lien upon the ship, and a right to proceed in rem against the offending vessel, is concisely stated in Benedict's Admiralty as follows:

"Sec. 131. * * * The maritime lien is an appropriation of the ship as a security for a debt or claim, such appropriation being made by the law; the law creates a remedy for the claim against the ship herself and vests in the creditor a special property in her, which subsists from the moment the debt arises, and follows the ship into the hands of an innocent purchaser. * * * And in cases of maritime tort, the same law considers that the wrong gives to the person who has suffered thereby a right to look to the ship for his remedy, gives him a proprietary interest in her as security for his redress, and hence gives to him what is called a maritime lien upon the ship." The Anaces, 93 Fed. 240, 34 C. C. A. 558; The Slingsby (D. C.) 116 Fed. 227.

An examination of the Workmen's Compensation Act must determine the intent of the Washington Legislature in enacting this law. Section 1 of the Washington act declares, among other things:

"The common-law system * * * is inconsistent with modern industrial conditions."

[2] No other system is mentioned or referred to in the act. The statement that "all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished," when used in connection with the words "common-law system," limits the phrase "all civil actions and civil cause of action" to causes at common law, and precludes the conclusion that there was any intention to reach beyond such remedies or to include any other right of which the injured party might avail himself. This conclusion is further strengthened when it is remembered that the Constitution of the United States provides that judicial power shall be vested in the Supreme Courts and inferior courts to be established, and that judicial power shall extend to all causes of admiralty.

Article 3, § 2, of the Constitution:

"The judicial power shall extend * * * to all cases of admiralty and maritime jurisdiction."

Section 24, Judicial Code of the United States (Act March 3, 1911, c. 231, 36 Stat. 1091 [U. S. Comp. St. Supp. 1911, p. 135]), provides:

"The district courts shall have original jurisdiction as follows: * * * Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it."

Section 256, Judicial Code:

"The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several states: * * * Third. Of all civil causes of admiralty and maritime jurisdiction; saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it."

Benedict's Admiralty, § 128, says:

"The common-law remedy here mentioned is the right of a plaintiff to proceed in personam against a defendant, which remedy the common law is competent to give. * * * But the right to proceed in rem is distinctly an admiralty remedy, and hence exclusively within the control of the United States courts; no state can confer jurisdiction upon its courts to proceed in rem."

The nature of admiralty jurisdiction as being exclusive of state legislation was discussed by the Supreme Court of the United States in The Moses Taylor, 4 Wall. 411, 18 L. Ed. 397, in which it was held that a statute of California giving a right to proceed in rem for breach of a maritime contract was repugnant to the act of Congress investing the United States courts with exclusive jurisdiction of cases of admiralty. In referring to the clause which saves to suitors "the right of a common-law remedy, where the common law is competent to give it," the court said:

"It is not a remedy in the common-law courts which is saved, but a common-law remedy."

In the case of The Hine v. Trevor, 4 Wall. 555, 571, 572 (18 L. Ed. 451), which arose from a collision of steamboats on the Mississippi river, the court held that a statute of Iowa giving a right to proceed in rem was void, and said:

"But it could not have been the intention of Congress, by the exception in that section, to give the suitor all such remedies as might afterwards be enacted by state statutes, for this would have enabled the states to make the jurisdiction of their courts concurrent in all cases, by simply providing a statutory remedy for all cases. Thus the exclusive jurisdiction of the federal courts would be defeated."

How then can it be said that legislation by a state providing for the abolishment of all common-law remedies in cases of personal injuries to servants, and establishing, in lieu thereof, a remedy purely statutory and unknown to the common law, comes within the clause "saving to suitors in all cases the right of a common-law remedy; where the common law is competent to give it?" Yet it is manifest that, if this clause had not been inserted as a proviso to the grant of *exclusive* jurisdiction, the states would be powerless to exercise any jurisdiction in reference to admiralty cases, since the Constitution of the United States provides that "the judicial power shall extend * * * to *all cases* of admiralty and maritime jurisdiction." It is contended

that the state statute provides a remedy unknown to the common law, and undertakes to make it not merely concurrent with that provided by the maritime law but the sole remedy, abolishing a jurisdiction conferred, not by congressional enactment alone but by the Constitution, upon the courts of the United States.

In the case of The Belfast, 7 Wall. 624, 19 L. Ed. 266, the court held void a statute of Alabama similar to those above referred to; and, in reference to an attempt to make the jurisdiction in admiralty depend upon the power to regulate interstate commerce, said:

"Difficulties attend every attempt to define the exact limits of admiralty jurisdiction, but it cannot be made to depend upon the power of Congress to regulate commerce, as conferred in the Constitution. They are entirely distinct things, having no necessary connection with one another, and are conferred, in the Constitution, by separate and distinct grants. * * * Congress may regulate commerce with foreign nations and among the several states, but the judicial power, which, among other things, extends to all cases of admiralty and maritime jurisdiction, was conferred upon the federal government by the Constitution, and Congress cannot enlarge it, not even to suit the wants of commerce, nor for the more convenient execution of its commercial regulations."

If Congress may not enlarge this jurisdiction by including within it cases admittedly not cognizable in admiralty at the time of the adoption of the Constitution, then may a state contract it by withdrawing from the District Courts power to hear and determine causes concededly cognizable in admiralty before and since the adoption of the Constitution?

In The Lottawanna, 21 Wall. 558, 576 (22 L. Ed. 654), the court quotes Chief Justice Taney in The St. Lawrence, 1 Black, 526, 17 L. Ed. 180, in reference to the difficulty of determining the boundaries of admiralty jurisdiction, and with relation to which he said:

"But certainly no state law can enlarge it, nor can an act of Congress or rule of court make it broader than the judicial power may determine to be its true limits."

On page 576 of 21 Wall. (22 L. Ed. 654), the court says:

"The question as to the true limits of maritime law and admiralty jurisdiction is undoubtedly, as Chief Justice Taney intimates, exclusively a judicial question, and no state law or act of Congress can make it broader, or (it may be added) narrower, than the judicial power may determine those limits to be."

That an action for personal injuries sustained on board a vessel is within the admiralty jurisdiction is so well recognized that a citation of any of the numerous cases where it has been so held would be superfluous.

On page 576 of 21 Wall. (22 L. Ed. 654), the court further says:

"The Constitution must have referred to a system of law coextensive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several states, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the states with each other or with foreign states."

In Butler v. Boston Steamship Co., 130 U. S. 527, 9 Sup. Ct. 612, 32 L. Ed. 1017, the court on page 556 of 130 U. S. (9 Sup. Ct. 612, 32 L. Ed. 1017), quotes with approval the above excerpt from the Lottawanna Case, and on page 557 of 130 U. S., on page 619 of 9 Sup. Ct. (32 L. Ed. 1017), says:

"As the Constitution extends the judicial power of the United States to 'all cases of admiralty and maritime jurisdiction,' and this jurisdiction is held to be exclusive, the power of legislation on the same subject must necessarily be in the national Legislature, and not in the state Legislatures."

These decisions prepare the way for the celebrated case of Workman v. New York City, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314, which was an action in admiralty against the city and others for injuries caused to a vessel by a steam fireboat under the control of a department of the municipal government. The fireboat had been called to extinguish a fire and struck the other vessel, which was moored to a dock. The District Court entered a decree against the city, which was reversed by the Circuit Court of Appeals, on the ground that by the common law a municipal corporation was not liable for the negligence or want of skill of officers selected to perform a public service for the general welfare of the inhabitants or the community, and that by the decisions of the Court of Appeals of New York the city in the operation of the fireboat performed a governmental and not a corporate function. In a strong opinion by Justice White the Supreme Court held that the liability of the city should be determined by the principles of admiralty, and that these could not be controlled or modified by state decisions or state legislation. On page 558 of 179 U. S., on page 214 of 21 Sup. Ct. (45 L. Ed. 314), the court uses the following vigorous language:

"The practical destruction of a uniform maritime law which must arise from this premise is made manifest when it is considered that, if it be true that the principles of the general maritime law giving relief for every character of maritime tort where the wrongdoer is subject to the jurisdiction of admiralty courts can be overthrown by conflicting decisions of state courts, it would follow that there would be no general maritime law for the redress of wrongs, as such law would be necessarily one thing in one state and one in another; one thing in one port of the United States and a different thing in some other port. As the power to change state laws or state decisions rests with the state authorities by which such laws are enacted or decisions rendered, it would come to pass that the maritime law affording relief for wrongs done, instead of being general and ever abiding, would be purely local—would be one thing to-day and another thing to-morrow. That the confusion to result would amount to the abrogation of a uniform maritime law is at once patent. And the principle by which the maritime law would be thus in part practically destroyed would besides apply to other subjects specially confided by the Constitution to the federal government. Thus, if the local law may control the maritime law, it must also govern in the decision of cases arising under the patent, copyright, and commerce clauses of the Constitution."

And on page 561 of 179 U. S., on page 215 of 21 Sup. Ct. (45 L. Ed. 314), the court quotes with approval the following remarks of Justice Bradley in The Lottawanna, 21 Wall. 558, 22 L. Ed. 654:

"One thing, however, is unquestionable: The Constitution must have referred to a system of law coextensive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the

rules and limits of maritime law under the disposal and regulation of the several states, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the states with each other or with foreign states."

That it was the intention of the Legislature in passing the Workmen's Compensation Act not to come in conflict with congressional enactments or to impinge upon the exclusive jurisdiction of the federal courts is made further manifest by section 18 of the act, which provides:

"The provisions of this act shall apply to employers and workmen engaged in intrastate and also in interstate or foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the Congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, except that any such employer and any of his workmen working only in this state may, with the approval of the department, *and so far as not forbidden by any act of Congress*, voluntarily accept the provisions of this act by filing written acceptances with the department."

Thus, to those engaged in interstate commerce for whom a rule of liability has been established by federal law, the act does not apply unless written acceptances have been filed, and such acceptances *must not be inconsistent with any act of Congress*.

Under the authorities cited it is manifest that the state Legislature could not have abolished the jurisdiction of the United States District Courts over actions for maritime torts, even had it undertaken so to do. It is a familiar rule of construction that a legislative act will never be so construed as to impute to the Legislature an intent to enact legislation contrary to constitutional provisions or in conflict with paramount federal enactments.

An order denying the exceptions may be entered.