[No. 13375.  *En Banc.*  January 24, 1917.]

GEORGE SHAUGHNESSY, *Respondent,* v. NORTHLAND
STEAMSHIP COMPANY, *Appellant.*[1]

MASTER AND SERVANT—SAFE PLACE—DEFECTIVE GUARDS—NEGLI-
GENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.  The negli-
gence of the master and the contributory negligence of the servant,
are questions for the jury, where it appears that an employee, going
to his work in the hold of a ship, fell through the hatch, when an
iron stanchion at a corner of the hatch upholding a guard rope gave
way when the employee, holding onto the rope, was starting in the
usual way to descend the hatch ladder, it being necessary for him
to take hold of either the rope or the top of the hatch coaming, and
the rope and stanchion being apparently strong enough to support
the weight of a man.

APPEAL—REVIEW—HARMLESS ERROR — VARIANCE.  In a servant's
action for personal injuries, where the proof does not constitute such
a variance as to work to the prejudice of the appellant, error cannot
be based upon the failure of the court to strictly confine the issues
to the alleged necessity of an employee's taking hold of a rope that
gave way and caused him to fall.

SAME—WORKMEN'S COMPENSATION ACT—EMPLOYMENTS COVERED—
MARITIME SERVICE—ADMISSIBILITY.  The workmen's compensation act
compelling all employers and employees engaged in extra hazardous
employments to submit to compulsory insurance in lieu of common
law remedies, has no application to an employee engaged in unload-
ing a ship lying at a dock in the navigable waters of Puget Sound;
since to apply the act to relations arising from maritime service,
which are under the legislative control and jurisdiction of the Fed-
eral government, would make it operate unequally as between em-
ployers or employees, and the state has no power to abolish the
remedies afforded by the maritime laws of the United States.

SAME.  In such a case, it is immaterial whether the ship was
engaged in intrastate or interstate commerce, so long as it was not
in inland waters having no connection with the high seas.

SAME.  It being impossible to compel the ship master to contrib-
ute to the accident fund in such a case, it could not have been the
intent of the legislature to give his employees the right to compen-
sation from the fund.

SAME—WORKMEN'S COMPENSATION ACT—MARITIME SERVICE—RIGHT
TO COMPENSATION—REMEDIES—ADMIRALTY.  Under Rem. Code, § 6604-

[1]Reported in 162 Pac. 546.

27 of the workmen's compensation act, providing that, if any employer shall be adjudicated to be outside of the lawful scope of the act, the act shall not apply to his workmen, an employee injured while engaged on a ship in maritime service is not relegated to his remedies in admiralty, by reason of § 6604-1, which abolishes all civil actions for personal injuries in extra hazardous work; since, being outside the lawful scope of the act, all his rights and remedies remain unimpaired as if the act had never become a law of the state.

SAME—WORKMEN'S COMPENSATION ACT—EMPLOYMENTS COVERED—"STEAMBOATS," ETC. Rem. Code, § 6604-2, extending the provisions of the workmen's compensation act to "steamboats, tugs, and ferries," must be construed to apply only to vessels operating upon the inland navigable waters of the state over which the jurisdiction of the state courts are exclusive.

COURTS—DECISIONS OF FEDERAL COURTS — WORKMEN'S COMPENSATION ACT. The right to maintain an action in the state court under the workmen's compensation act is a state question upon which a decision of a Federal district court is not controlling in the state courts.

JUDGMENT—ENTRY—POWER TO CORRECT. A clerk's minute entry of a judgment of dismissal is properly set aside and expunged as inadvertent where it was entered without the knowledge of court or counsel, upon the court's oral announcement of an intent to order a dismissal notwithstanding the verdict, upon which the matter was postponed until counsel could prepare a formal judgment to be presented to the court; and hence does not prevent the court from entering a different judgment when the matter was presented to him with counsel for both parties before the court pursuant to the previous understanding.

Appeal from a judgment of the superior court for King county, Frater, J., entered October 28, 1915, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee engaged in unloading a steamship. Affirmed.

*Bronson, Robinson & Jones,* for appellant.

*Brady & Rummens (Thos. B. McMartin,* of counsel), for respondent.

PARKER, J.—The plaintiff, Shaughnessy, commenced this action in the superior court for King county, seeking recovery

of damages for personal injuries claimed by him to have resulted from the negligence of the defendant steamship company while he was working for that company in the hold of its steamship Alki assisting in its unloading, while it was lying in the navigable waters of Puget Sound alongside a wharf in the city of Anacortes. The trial resulted in verdict and judgment in favor of the plaintiff, awarding him $3,500 damages, from which the defendant has appealed to this court.

It is first contended in appellant's behalf that the trial court erred in refusing to sustain its counsel's challenge to the sufficiency of the evidence, timely made, and decide, as a matter of law, that appellant was not guilty of negligence and that respondent's injuries were the result of his own negligence. It was while returning to his work after having his supper on the day in question that respondent received the injuries for which he here sues to recover. He was required to go to his work in the hold of the ship through the hatch down a ladder. The hatch was about twelve feet square, its coaming rising some ten inches above the deck. The ladder down which the employees were required to go into the hold to their work was stationary, perpendicular, and set back under the edge of the hatch some four or five inches so as to avoid coming in contact with the cargo sling as it was lowered into or raised from the hold in loading or unloading the ship. While the hatch was open and the unloading proceeding, there was placed around it in the usual manner a rope run through eyelets at the top of iron stanchions which were set in the deck at each corner of the hatch just outside the coaming, so that the rope ran parallel with the sides of the hatch some two feet or more above the deck over the edge of the hatch. The stanchions and rope constituted a railing which was apparently strong enough to at least bear the weight of a man, whether such weight might come in contact with the rope laterally or directly downward. When respondent returned to his work after supper and started

to go down into the hold, he took hold of the rope with his hands, or at least with one hand, reached one foot down to the upper rung of the ladder, evidently intending to descend backward, as was usual; and, proceeding upon the assumption that the rope was strong enough and the stanchion sufficiently secure to bear his weight, allowed his weight to come upon the rope. One of the stanchions gave way where it was set into the deck, and this sudden giving away and slackening of the rope caused him to lose his hold and fall into the hold, some twenty feet below, resulting in his injuries.

It seems quite plain to us that, in view of the position of the rope with reference to the ladder, its apparent strength, and the apparent strength and security of the iron stanchions which held it in place, and the fact that to start to descend the ladder necessarily required respondent to take hold of either the top of the hatch coaming or the rope, it cannot be said, as a matter of law, that appellant was free from negligence in having the rope in this position less secure than it apparently was, or that respondent was guilty of contributory negligence in taking hold of the rope and depending upon it to temporarily support him rather than entirely depending upon a hold upon the hatch coaming. The jury might have well concluded that the situation was such as invited respondent and others descending the ladder to take hold of the rope as well as the hatch coaming in starting to descend. We are quite clear that it cannot be held otherwise as a matter of law.

Some contention is made in appellant's behalf upon the theory that the complaint seems to be framed upon the assumption that respondent was necessarily required to take hold of the rope in starting to descend and that the proof fails to show that there was any real necessity for his so doing, the argument being apparently that there was no other issue in the case than that of the necessity of taking hold of the rope, so far as respondent's contributory negligence is concerned. We are convinced, however, that the

proof did not, in any event, constitute such a variance as worked to the prejudice of appellant upon the trial, and that it was enough to warrant the jury finding in respondent's favor that the situation was such as to in effect invite him to take hold of the rope preliminary to his descending into the hold. It seems quite clear to us that the court did not err in leaving the question of negligence, both on the part of appellant and respondent, to the jury, and that respondent was not prejudiced by the fact that the issues were not confined by the court strictly to the question of the necessity of taking hold of the rope by respondent.

What we regard as the most important question here presented is, Has our workmen's compensation act (Rem. Code, § 6604-1 *et seq.*) withdrawn from controversy in the courts causes of action of this nature arising out of employment such as respondent was engaged in at the time he was injured, and substituted therefor the remedy and compensation provided for by that act? This question was presented to the superior court by respondent's demurrer to appellant's first affirmative defense, and by appropriate motions, made during the course of the trial, invoking the provisions of the workmen's compensation act as a complete defense in this action. The trial court, by its rulings on the demurrer and the motions, declined to entertain this defense, being of the opinion that claims of this nature arising out of maritime employment are not withdrawn from controversy in the state courts and the right to compensation from the accident fund provided for by the act substituted therefor.

Our workmen's compensation act, let us be reminded, is one under which neither the employer nor the employee has any right of election as to whether he will come under and be governed by its provisions, so far as extra hazardous employment is concerned. Neither can exempt himself from the burdens which it imposes, nor by contract waive the benefits thereof in the sense that he can bar himself from the right to claim its benefits. The employee, by the terms of the act,

has taken away from him the right to sue in the courts upon his cause of action, and in lieu thereof is furnished indemnity in certain specified amounts, payable from the accident fund provided for in the act, according to the nature of his injury, regardless of the fault of his employer. The employer is compelled to contribute to the accident fund certain specified amounts, according to the hazardous nature of the work of his employees, and in return therefor is furnished indemnity against all claims of his employees for injuries received in the course of their employment. Thus the act in effect provides for compulsory insurance, both for the employer and the employee, and manifestly contemplates that *all employers* and *all employees,* who are compelled to come under the act and have their rights each as against the other controlled and determined by its provisions, shall enjoy such privileges and immunities equally, in harmony with the guaranty of § 12 of art. 1 of our state constitution. This evident spirit of the act, we think, points to a legislative intent to make the act applicable only to those relations of employer and employee which are in the legislative control of the state untrammeled by the laws of the United States and the jurisdiction of the courts of the United States, which might have the effect of rendering the privileges and immunities for which the act provides unequal as between employers or unequal as between employees. If these observations be sound, it seems to follow almost as a matter of course that, in so far as the maritime service of appellant's employees is concerned, it is not required to contribute to the accident fund provided for in the act out of which workmen are to be compensated for their injuries in lieu of the right to sue therefor in the courts, and such employees, injured while so engaged in maritime service, are not required to accept the limited compensation provided therefor out of the accident fund.

That the employment in which respondent was engaged for appellant was maritime in its nature, and that the question of his compensation for the injuries received by him here in-

volved are subject to controversy in admiralty in the Federal courts regardless of all state laws, seems quite clear in view of the fact that he was working upon the ship for appellant while it was lying in the navigable waters of Puget Sound. Nor does the fact that he was assisting only in unloading the ship instead of assisting in its navigation lessen his right to seek his remedy in admiralty. *Atlantic Transport Co. v. Imbrovek*, 234 U. S. 52, 51 L. R. A. (N. S.) 1157; *Imbrovek v. Hamburg-American Steam Packet Co.*, 190 Fed. 229; *The Fred E. Sander*, 208 Fed. 724.

In our recent decision in *State ex rel. Jarvis v. Daggett*, 87 Wash. 253, 151 Pac. 648, L. R. A. 1916A 446, we reached the conclusion that a navigation company operating vessels upon Puget Sound is not required to contribute to the accident fund provided for by our workmen's compensation act to compensate its employees injured while engaged in maritime service. In that case, the question arose upon the petition of a maritime employee of the company injured while working upon one of its ships as an oiler. He presented his claim to the commission, seeking compensation from the accident fund provided for by the act. His claim was rejected by the commission upon the ground that the act did not give it any jurisdiction over such navigation companies and their employees engaged in maritime service. The injured employee then applied to this court for a writ of mandate to compel the commission to make demand upon and take proceedings to collect contributions to the accident fund from navigation companies to the end that his claim might be paid from such fund. While recognizing that certain language of the act presently to be noticed, which, read literally and apart, would seem to have the effect of subjecting such companies and their employees to the provisions of the act, Judge Main, speaking for the court, at page 257, said:

"The maritime law being a part of the law of the United States, the legislature of a state has no power to modify or abrogate it. *Workman v. New York City*, 179 U. S. 552.

It follows, therefore, that the legislature in passing the compensation act could not take from a workman any right which he had under the maritime law of the United States. The petitioner here still has the right to pursue his remedy in admiralty. Gathering the purposes of the act from all its provisions, we think it could not have been the legislative intent to attempt to encroach upon the admiralty jurisdiction of the Federal court. . . . It seems to be the purpose of the act to give the relief therein granted where the legislature had the power to abolish every other remedy. If companies operating boats upon Puget Sound are within the act, then they may be compelled to pay the percentage of their pay rolls specified, and yet be subject to a right of action in admiralty; while other persons or corporations engaged in a hazardous business not covered by admiralty law would be completely protected against the pursuit of any other remedy or proceeding. The owner of a steamboat, if he should pay the percentage of his pay roll specified, and his injured seamen should pursue their remedy in admiralty, would receive no protection from the act, and yet would be subject to its burdens. If the act were given this construction, it might well be doubted whether it would not offend against that provision of the fourteenth amendment to the constitution of the United States which provides that no state shall make or enforce any law which shall 'deny to any person within its jurisdiction the equal protection of the laws.' "

We note that the ship there in question was engaged in interstate as well as intrastate commerce; but the decision was rested upon the fact that the admiralty remedy remained unimpaired, which is not affected by the nature of the ship's commerce so long as it is not on inland waters having no connection with the high seas or another state. Now it seems almost unthinkable that the legislature ever intended to give to an employee the right to compensation out of the accident fund provided for in the act and at the same time not require his employer to contribute to that fund. So it seems to us that when it has once been determined, as it has been in the *Jarvis* case, that an employer whose employees are engaged in maritime service is not required to contribute to the acci-

dent fund, it necessarily follows that such employees cannot lawfully claim compensation from that fund. This, we think, became in effect as thoroughly settled by the *Jarvis* decision as that navigation companies are not required to contribute to the accident fund so far as the maritime service of their employees is concerned.

Does it follow that the act by its terms, assuming that it could do so, has taken away respondent's right to sue in the courts, other than in admiralty, for damages resulting in his injuries, as he is here doing? It seems to be so argued by counsel for appellant. Looking to the provisions of the act, ch. 74, page 345, Laws of 1911, Rem. Code, §§ 6604-1, 6604-2, 6604-27, so far as necessary to here notice them, we read:

"Section 1. . . . The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided."

"Sec. 2. . . . This act is intended to apply to all such inherently hazardous works and occupations, and it is the purpose to embrace all of them, which are within the legislative jurisdiction of the state, in the following enumeration, and they are intended to be embraced within the term 'extra hazardous' wherever used in this act, to wit: . . . steamboats, tugs, ferries . . ."

"Sec. 27. If any employer shall be adjudicated to be outside the lawful scope of this act, the act shall not apply to him or his workman, . . ."

If our decision in the *Jarvis* case is to remain as a correct exposition of the law in so far as therein discussed, the last quoted paragraph from section 27 of the act seems to render

it quite plain that both appellant and respondent are "out-side the lawful scope of this act," that none of the rights of either of them are in the least changed or lessened by its pro-visions, and that their rights and remedies remain unimpaired as if the act had never become the law of this state. The views expressed in the following decisions are in harmony with our conclusion here reached, though the questions therein considered are not exactly the same as here presented. *Rey-nolds v. Day*, 79 Wash. 499, 140 Pac. 681, L. R. A. 1916A 432; *Cunningham v. Northwestern Imp. Co.*, 44 Mont. 180, 119 Pac. 554; *Schuede v. Zenith S. S. Co.*, 216 Fed. 566.

There has come to our notice the decisions in *Mathison v. Minneapolis St. R. Co.*, 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D 412; *Lindstrom v. Mutual Steamship Co.*, 132 Minn. 328, 156 N. W. 669, L. R. A. 1916D 935, and *Kennerson v. Thames Towboat Co.*, 89 Conn. 367, 94 Atl. 372, L. R. A. 1916A 436, which are thought to be out of harmony with our own views herein expressed. Those cases, however, deal with workmen's compensation acts which leave it optional with the employer and employee as to whether they will come under and be governed by the pro-visions of the acts in question. In such cases we see no reason why such an election on the part of the employer and em-ployee might not be held to divest the claimant of the right to resort to admiralty for relief upon the ground of estoppel; as where there is an election to sue in the state court instead of in admiralty, in the absence of a workmen's compensation act. Such, in substance, is the theory upon which Judge Neterer of our Federal district court rendered his decision in the case of *The Fred E. Sander*, 212 Fed. 545, holding that the libelant having applied for and received compensa-tion from the accident fund under our workmen's compensa-tion act, he thereby became precluded from seeking redress in admiralty. The question of the libelant's right to receive compensation from the accident fund, and the question of the duty of the commission in making such award from that fund,

was a matter with which the Federal court was not called upon to concern itself. It was enough for the learned judge of that court to know that the libelant, seeking his remedy in admiralty, had been awarded and accepted compensation from the accident fund under the act.

In *Walker v. Clyde S. S. Co.*, 215 N. Y. 529, 109 N. E. 604, Ann. Cas. 1916B 87, we have a decision in which there are some remarks of the court which may seem opposed to our views herein expressed. In that case, the injured employee was engaged in maritime service such as would have secured to him his remedy in admiralty had he elected to so assert it. He applied to the state commission and was awarded compensation from the accident fund provided for in the workmen's compensation act. His employer, the steamship company, as it apparently had the right to do under the act, caused the question of the claimant's right to compensation from that fund to be removed to the courts for review, with a view of defeating the award made by the commission. The fact of the steamship company having contributed to the accident fund seems to be assumed in the decision. Whether it did so by compulsion or at its own election does not appear in the opinion of the court. The decision may be harmonized with the conclusion we here reach, if we assume that the workmen's compensation act of that state does not compel the employer to contribute to the fund from which the claimant was compensated, but is only elective in that regard. If the employer having such right of election voluntarily contributed to the fund and the employee took compensation therefrom, both would be in substantially the same position as the employee found himself in *The Fred E. Sander* case, 212 Fed. 545. If the decision cannot be harmonized with our views upon this theory, with all due respect for that great court, we would feel constrained to not follow it, in the light of our decision in the *Jarvis* case, which we are not now inclined to recede from.

We have not overlooked the decision of Judge Cushman of our Federal district court in *Stoll v. Pacific Coast S. S. Co.*, 205 Fed. 169, wherein it was held that an action upon the law side of the Federal district court, which could have been maintained in admiralty, for injuries received as the result of the steamship company's negligence could not be maintained; the decision being rested upon the language of section 1 of the act (Id., § 6604-1) above quoted, and apparently regarded by the court as absolutely abolishing the employee's right to maintain such an action in the courts and substituting therefor his right to compensation from the accident fund. The fact that the plaintiff had a right to seek his remedy in admiralty seems not to have been noticed in the case. We think, therefore, that the decision would not be a controlling authority here even if the question were a Federal one, as it manifestly is not, since it has to do, in its last analysis, only with the right to maintain a common law action in the state courts.

Included in the enumeration of extra hazardous works in section 2 (Id., § 6604-2) of the act are "steamboats, tugs, ferries." If our conclusion rendered these words in the act meaningless, it might be argued with some show of reason that we are not correctly construing its provisions. There are, however, a number of inland navigable lakes wholly within the boundaries of this state having no navigable connection whatever with rivers or tide waters constituting navigable waterways to the high seas. It seems to be well settled that the jurisdiction of the state over such inland waters so unconnected with the high seas is exclusive, and that there is no Federal admiralty jurisdiction over such waters. *Commonwealth v. King*, 150 Mass. 221, 22 N. E. 905, 5 L. R. A. 536; *Stapp v. Steamboat Clyde*, 43 Minn. 192, 45 N. W. 430; *United States v. Burlington & Henderson County Ferry Co.*, 21 Fed. 331. It therefore seems plain that the words "steamboats, tugs, ferries" are not rendered meaningless by our construction of the act. We note in this connection that sec-

tion 2 (Id., § 6604-2) of the act, above quoted from, provides that "it is the purpose to embrace all of them [extra hazardous works] which are within the legislative jurisdiction of the state."

It is contended that the trial court had no jurisdiction to render the judgment in favor of the respondent which is here appealed from because it had previously rendered a final judgment of dismissal in appellant's favor upon its motion for judgment notwithstanding the verdict. Upon the return of the verdict, the clerk, by direction of the court, withheld entry of judgment thereon pending appellant's motion for judgment notwithstanding the verdict. Thereafter that motion was argued and decision thereon taken under advisement by the court. Thereafter the trial judge announced in open court, in substance, that he had concluded to grant appellant's motion for judgment notwithstanding the verdict, when it evidently was understood by the court and counsel for both parties that judgment be prepared accordingly; and since the ground upon which the court was inclined to so hold was that respondent had no right of action in the courts because of the passage of our workmen's compensation act, it apparently was then contemplated that judgment of dismissal would be prepared in such form that the question of respondent's right to maintain the action in the light of our workmen's compensation act might be presented to this court upon a short record. The matter was to be postponed until counsel could prepare some such form of judgment. However, at that time the clerk of the court did make a brief minute entry which could be construed as a final judgment of dismissal of the case in harmony with the views then expressed by the court. This entry was made without the knowledge of the court or of counsel for either party as to its contents. Thereafter, counsel for both parties were again before the court for the purpose of having formal judgment entered, when the judge announced that he had reached a different conclusion upon further reflection and had become

of the opinion that the workmen's compensation act did not preclude respondent from maintaining this action, in view of the fact that his injuries resulted while he was in maritime service. Formal judgment was then prepared and entered accordingly, from which this appeal was taken. It was not until after this that the contents of the minute entry made by the clerk were discovered by either counsel or the court. Thereafter, on a proper showing and notice in the form of an order to show cause, the minute entry was set aside and expunged from the record upon the ground that the same had been entered by the clerk "inadvertently and through mischance." It seems plain to us that the showing was sufficient in warranting the court in so concluding and ordering in reference to that entry. It follows that the judgment here appealed from is the only judgment that was actually rendered in the case.

Some other claimed errors are relied upon by counsel for appellant. We think, however, that whatever technical error there may have been in the rulings so questioned, they were wholly without prejudice to the rights of appellant and that they do not call for further notice here. We conclude that the judgment must be affirmed. It is so ordered.

ELLIS, C. J., MAIN, MOUNT, HOLCOMB, and FULLERTON, JJ., concur.