[No. 30440.    Department Two.    December 23, 1948.]

O. M. HUSEBY *et al.*, *Appellants*, v. MIKE KILGORE, *as Sheriff of Grays Harbor County, et al.*, *Respondents*.[1]

[1]Reported in 201 P. (2d) 148.

*Gordon & Gordon* and *Gladys Phillips,* for appellants.

*Paul O Manley, Stanley J. Krause,* and *Ray L. Johnson,* for respondents.

JEFFERS, J.—This action was originally commenced in the superior court for Grays Harbor county, by O. M. Huseby, A. E. Corey, and E. J. Elmore, partners doing business as E. J. Elmore Company, against Mike Kilgore, sheriff of Grays Harbor county, United States Fidelity and Guaranty Company, a corporation, and Kelly, Inc., for the purpose of obtaining judgment against the defendants and each of them for the value of 295 table tops, of which plaintiffs claimed to be the owners, and which it was alleged were converted by defendants. Subsequent to the institution of the action, a motion was made to make Stanley J. Krause, as receiver for Fibrinite Company, Inc., a corporation, a party to the action, and on March 7, 1947, an order was entered making such receiver a party defendant in the action.

Defendants Mike Kilgore, United States Fidelity and Guaranty Company, and Kelly, Inc., filed an answer and cross-complaint, whereby they admitted and denied certain allegations of the complaint, and, by way of cross-complaint, alleged in substance that on or about November 22, 1946, defendant Kelly, Inc., brought an action in the superior court for Grays Harbor county against Fibrinite Company for collection of a debt in the sum of $4,649.77; that in connection with such action, Kelly, Inc., caused a writ of attachment to issue, by virtue of which Mike Kilgore, as sheriff of Grays Harbor county, levied on and attached certain personal property consisting of table tops and metal trim belonging to Fibrinite Company and located on the company's premises at 410 north Park street, Aberdeen, Washington; that all of such property is still held under the writ of attachment, and is in the actual custody of the sheriff of Grays Harbor county.

It was further alleged by these defendants that, shortly after the last-above-mentioned action was started, proceed-

ings were had in the superior court for Grays Harbor county in cause No. 40106, entitled "In the Matter of the Application for Appointment of a Receiver for Fibrinite Company, Inc.," whereby such corporation was adjudged to be insolvent, and Stanley J. Krause, of Aberdeen, was appointed by the court to act as receiver for the company; that Stanley J. Krause has qualified as receiver and is now in charge of the company's affairs and business.

It was further alleged that Stanley J. Krause, as receiver for Fibrinite Company, has made demand upon the answering defendants for the possession of all the personal property held by them under the writ of attachment, and asserts title to the same; that Stanley J. Krause should be required to file a pleading setting forth his claim to such property, so that the same can be adjudicated; that the claims of title to such property by the plaintiffs and by Stanley J. Krause as such receiver are subsequent and inferior to the lien held by the answering defendants by virtue of their writ of attachment.

Stanley J. Krause, as receiver, filed an answer and cross-complaint. The substance of the receiver's answer is that on November 22, 1946, Fibrinite Company was the owner of, and entitled to the possession of, 295 table tops, which are described in the answer, the same being the ones claimed by plaintiffs; that on the same date defendant Mike Kilgore, under writ of attachment obtained by defendant Kelly, Inc., took such table tops from the possession of Fibrinite Company, and still detains the same from Stanley J. Krause, as receiver for the company.

It is further alleged that plaintiffs wrongfully claim title to the above-mentioned table tops; that, if any transfer of the tops was made to the plaintiffs, it was done in preference of creditors, and therefore is null and void.

The receiver then asked that the complaint of plaintiffs and the cross-complaint of defendants be dismissed; that they take nothing by this action; and that the claim of the receiver be decreed to be superior to the rights of the other parties hereto.

Plaintiffs by their reply denied the affirmative allegations in the answer and cross-complaint of the receiver, and also in the answer and cross-complaint of the other defendants.

The matter came on for hearing before the court on April 29, 1947, and thereafter, on June 6, 1947, the court made and entered a memorandum decision, to which, in view of what subsequently transpired, we desire to call attention, and from which we quote:

"Plaintiffs sue for the value of 295 table tops, alleged to have been purchased from Fibrinite Company, Inc., and seized by the defendant Sheriff on process issued on behalf of defendant Kelly, Inc.

"The claim of purchase is based upon an agreement under which plaintiffs agreed to take the entire Fibrinite output, and an understanding between seller and purchaser that for purposes of economy merchandise would remain in storage in the manufacturer's [Fibrinite's] plant subject to shipping orders from plaintiffs.

"Plaintiffs' suit is for the value of 75 30x48s and 220 30x42s. These quantities of these sizes were seized by the Sheriff, as shown in his inventory. . . Other table tops and trimmings seized by the Sheriff are not claimed by the plaintiffs. The evidence indicates that certain of the seized table tops had been marked for shipment to Tri-Way Industries, in Seattle. That shipment had actually been made of a quantity of table tops and that those seized by the Sheriff were ones that had been rejected and returned. I do not believe the evidence has shown definitely the number or description of these rejects. Others were marked for shipment to Broadway Furniture Company, Tacoma, and apparently had not been shipped. I believe and hold that all of these rejects and all packages designated and marked to be shipped to Broadway were the property of plaintiffs and to them title had passed. But I am unable, from the evidence, to arrive at the amount or quantity. This can be determined by the parties by examination and counting.

"The value has been fixed as $30.62 for the 30x42s and $35.00 for the 30x48s, both, however, subject to discounts . . .

"Since Fibrinite had continued manufacturing after the marking of these shipments, and since, upon careful examination of the testimony, the Court is satisfied there was considerable co-mingling and moving around at the plant,

plaintiffs' recovery will be strictly limited to such amount as may be determined, as herein set forth, with statutory costs."

Subsequently, on September 5, 1947, the court signed findings of fact, conclusions of law, and judgment. The court found, and there is no dispute, that plaintiffs are partners doing business under the name of E. J. Elmore · Company, having their principal place of business in Tacoma, Washington; that defendant Mike Kilgore is the duly elected, qualified, and acting sheriff of Grays Harbor county; that United States Fidelity and Guaranty Company is surety on the official bond of the sheriff, which bond has been duly and properly filed with the county clerk of Grays Harbor county, and is an indemnity bond indemnifying third parties from damages sustained from acts committed by the sheriff; that Kelly, Inc., is a corporation having its principal place of business at Seattle, Washington.

"(5) That on or about the 22nd day of November, 1946, the plaintiffs were the owners of and entitled to the immediate possession of 75 30x48 table tops and 220 30x42 table tops, which table tops were situated in the plant of the Fibrinite Company, Inc. in the city of Aberdeen, Washington.

"(6) That on or about the 22nd day of November, 1946, the defendant Mike Kilgore under a writ of attachment obtained by the defendant Kelly, Inc. in a suit of Kelly, Inc., a corporation vs Fibrinite Company, Inc., a corporation, the same being cause No. 40057 in the superior court of Grays Harbor County, Washington, wrongfully took said table tops from the place where they were situated and said defendants Mike Kilgore, Sheriff, and Kelly, Inc., still detain the same from the plaintiffs without the consent of the plaintiffs and have converted said property to their own use.

"(7) That at the time of said taking, the said table tops were packed in cartons and the cartons were labeled for shipment, and a portion of said cartons had previously been shipped to Tri-Way Industries in Seattle for and on behalf of the plaintiffs and had been returned to the plaintiffs by the said Tri-Way Industries.

"(8) That said table tops were situated in a pile in the plant of the Fibrinite Company, Inc. and were under the

exclusive jurisdiction and control of the plaintiffs. That plaintiffs had paid in full for said table tops and title had passed to the plaintiffs.

"(9) That the value of the 30x48 table tops is fixed at $35.00 and of the 30x42 table tops at $30.62, each subject, however, to discounts of 50%, 10% and 10% plus a reasonably to be anticipated profit on the net cost of 10%. That the total value of said tops is $4,170.50."

The court then concluded that plaintiffs were entitled to judgment against defendants Mike Kilgore and Kelly, Inc., in the sum of $4,170.50; that the defendant Stanley J. Krause, receiver, has no claim to the above-mentioned table tops; that the defendant United States Fidelity and Guaranty Company is a bonding company on the official bond of Sheriff Mike Kilgore, and plaintiffs are entitled to judgment against the defendant bonding company. Judgment was duly entered on September 5, 1947, in accordance with the findings and conclusions.

On September 26, 1947, all of the defendants hereinbefore named filed a motion to vacate judgment and for new trial. The motion to vacate judgment is specifically based upon the ground of fraud practiced by plaintiffs in obtaining the judgment, and the motion for new trial is based upon the ground of fraud practiced by plaintiffs in the trial of the cause, and the additional ground of newly discovered evidence which could not with reasonable diligence have been discovered prior to the making and entry of the judgment. The motion to vacate judgment and for new trial is based upon the affidavits of Paul Manley and Stanley J. Krause. An order to show cause was issued on such motion, and thereafter plaintiffs filed controverting affidavits by J. H. Gordon, Jr., one of counsel for plaintiffs, and E. J. Elmore.

Thereafter, the matter came on for hearing on the motion, and on October 10, 1947, the court entered a judgment purporting to modify the former judgment. We quote this latter judgment, as it in part explains the court's position and reasons for such modification.

"This action was tried before the Court on the 29th day of April, 1947, plaintiffs being represented by their attor-

neys, Gordon & Gordon, and Gladys Phillips, and the defendants by their attorneys, Paul O. Manley and Stanley J. Krause, and on the 6th day of June, 1947, the Court made and filed a memorandum of its decision, the Court holding and deciding that title had passed to plaintiffs only in those table tops which were marked and labeled for shipment to its customers, the amount to be determined by the parties by examination and counting.

"Thereafter, upon notice, the parties were represented in Court by their attorneys for the entry of formal judgment, on the 5th day of September, 1947, at which time a purported inventory signed by one of the plaintiffs, E. J. Elmore, and by Charles M. Rubyn was submitted to the Court and filed as Defendants' Exhibit No. 2. Mr. Rubyn was sworn and testified that all of the bundles of table tops were labeled for shipment and Defendants' Exhibit No. 2, signed by Mr. Elmore and Mr. Rubyn so indicates. Thereupon, plaintiffs submitted their form of findings, conclusions and judgment. providing for recovery by the plaintiffs of the sum of $4,170.50, and representing the value of approximately 295 table tops.

"Thereafter, defendants filed a motion for vacation of that judgment and for a new trial on several statutory grounds and said motion came on regularly for hearing with supporting affidavits and controverting affidavits on the 3rd day of October, 1947, the parties being represented by the same respective attorneys, at which time it was represented to the Court that instead of 295 table tops being labeled for shipment there were approximately 80 so labeled, at which time the Court announced that in the event that were true the judgment as entered did not correspond to the memorandom of decision, that the court adhered to its decision, as set forth in the memorandum and that the purported judgment of September 5, 1947, was not in fact the judgment of the Court, and that such judgment should be modified accordingly.

"Thereafter the parties appeared in court by their respective attorneys ·on this 10th day of October, 1947, for the purpose of having a formal order entered, and it was stipulated by the parties that the number of table tops under label amounted to 80 and no more, having a value of $1,092.00. Plaintiffs' recovery must therefore be limited to such amount; and that the judgment of September 5, 1947, is erroneous and rests upon a false premise.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED: That a new trial be denied; that plaintiffs have and recover of

and from the defendants, Mike Kilgore, Sheriff of Grays Harbor County, Washington, United States Fidelity & Guaranty Company, a corporation, and Kelly, Inc., a corporation, the sum of $1,092.00, together with interest at the rate of 6% per annum from the 22nd day of November, 1946, and their costs and disbursements taxed in the sum of $33.20.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED: That the findings, conclusions and decree entered on the 5th day of September, 1947, be modified accordingly, and that any amount of excess of the judgment hereby granted is canceled and stricken, such judgment being modified in accordance herewith.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED: That the defendant, Stanley J. Krause, as receiver, is decreed to be the owner and entitled to the possession of all other table tops and materials seized by the Sheriff."

No new findings and conclusions, nor changes in the original findings and conclusions, were ever actually made.

Plaintiffs have appealed from the judgment of October 10, 1947, and particularly from that portion of the judgment vacating the original judgment of September 5, 1947, and reducing the amount recovered by plaintiffs from $4,170.50 to $1,092.

Appellants make the following assignments of error: That the court erred (1) in vacating the judgment of September 5, 1947, and in entering the new judgment of October 10, 1947; (2) in limiting appellants to the value of the goods taken which bore the shipping labels, instead of allowing appellants the full value of all their goods which were taken by the sheriff.

In our opinion, there is little, if any, dispute in the material facts established by the evidence in this case. The business of appellants was that of selling table tops manufactured by Fibrinite Company, Inc., of Aberdeen. Appellants' place of business was located in the city of Tacoma. Mr. Elmore was apparently the selling agent of the partnership, he being the one who obtained the orders for the table tops and the one who visited the plant of Fibrinite Company at Aberdeen and kept in touch with the situation relative to the table tops manufactured by that company.

Appellants had been engaged in selling these tops for some time previous to September 10, 1946, on which date, apparently for the primary reason of assisting Fibrinite Company in financing its operation, a written agreement (plaintiffs' exhibit No. 2) was entered into between Fibrinite Company, Inc., as first party, E. J. Elmore, a copartnership, as second party, and the Puget Sound National Bank of Tacoma, as third party. Under this agreement, second party was to purchase the entire output of Fibrinite Company. The contract further stated and provided that third party had loaned to first party five thousand dollars on its note, and that third party was willing to finance the accounts receivable of first party, upon proper arrangements being made. Such arrangements were, in brief, as follows:

First party was to forward all statements for its products upon shipment of such products to second party, after first noting on each statement that the account therein represented had been assigned to third party, and attaching to each statement a note in favor of third party for eighty per cent of the net amount due first party, as shown by the statement. Immediately upon receipt of such statements, second party agreed to obligate itself to pay such statements by marking its acceptance on the statements and then immediately turning them over to third party. Second party further agreed to pay all of such statements so accepted in due course, such payments to be made directly to third party. Third party agreed, upon receipt of such accepted statements, together with the notes attached, to deposit to the account of first party in its bank, eighty per cent of the amount of the statements as shown by the notes of first party. The notes of first party, as above set out, were to be discharged as payments on the respective accounts were received by third party. There were other provisions of the contract, but those set out are sufficient for our purposes at this time.

Subsequent to the execution of the above written contract, and, in the latter part of September or early part of October, an oral agreement supplementing the written

agreement was entered into, for the purpose of further assisting Fibrinite Company in its operations, and to do away with the shipping of table tops from Aberdeen to Tacoma and reshipping them to customers as sold by appellants. Under this supplemental agreement, it was agreed that appellants would take and immediately pay for the entire output of the factory as it was produced, whether or not orders for the output had been received by appellants; and in consideration of this, Fibrinite Company agreed to, and did, allow appellants to use a portion of the floor space of its plant for storage purposes, and agreed to handle the shipping of the table tops to the customers of appellants, as directed by appellants. This arrangement was necessary because appellants did not have sufficient storage space of their own in Tacoma, and also, as we have said, to avoid the additional expense of double handling which would be caused by shipping from the factory to Tacoma, and again from Tacoma to the ultimate customers.

When invoices were received from Fibrinite Company, Mr. Elmore would make a check to determine that the table tops were actually there. There is testimony to show that the tops with which we are here concerned, and which are claimed by appellants, were stored in the plant near the receiving door. There were introduced in evidence as plaintiffs' exhibit No. 4, three invoices of Fibrinite Company showing thereon certain table tops which, appellants' testimony tended to show, were the tops here claimed by them. Appellants' testimony further showed that these tops were piled in a stack near the door in the plant; that they had been paid for through the arrangement with Puget Sound National Bank hereinbefore referred to; and that title to such tops had passed to appellants prior to the levy by the sheriff of Grays Harbor county on November 22, 1946. The return of the sheriff, who testified in the case, would seem to indicate that he had levied and taken into his possession the tops covered by the invoices above referred to, together with other property of Fibrinite Company situated in its plant.

At the close of the trial, as indicated by the memorandum decision from which we have heretofore quoted, the trial judge was of the opinion that table tops belonging to appellants had been converted, but there seemed to be a question in his mind as to just the number of table tops that had actually passed to and been paid for by appellants, it apparently being his opinion at that time that appellants' recovery should be limited to table tops labeled or marked for shipment to Tri-Way Industries and those marked for shipment to Broadway Furniture Company. As stated, the trial court seemed to be unable, from the testimony which had been submitted, to determine the exact number of these tops.

Thereafter, apparently in order to make a check on the table tops to determine just how many had been labeled, Mr. Elmore, representing appellants, and Mr. Charles M. Rubyn, formerly employed by Fibrinite Company as supervisor of the finishing department, representing respondents, visited the warehouse where the table tops had been stored by the sheriff, and purported to make an inspection thereof. Thereafter, these two gentlemen filed a purported inventory of their check, which inventory was introduced in evidence as defendants' exhibit No. 2.

After this examination by the gentlemen last referred to, the case was reopened on September 5, 1947, at which time the inventory last above referred to was introduced, and Mr. Rubyn was called as a witness on behalf of respondents and was examined at length by counsel for both respondents and appellants. After considering such testimony, the court apparently felt sufficiently conversant with the situation to make and enter the findings of fact, conclusions of law, and judgment of September 5, 1947, to which we have hereinbefore referred. It will be noted that in such findings, part of which we have quoted, the court specifically found that on November 22, 1946, appellants were the owners of and entitled to the immediate possession of seventy-five 30 x 48 and two hundred twenty 30 x 42 table tops, which table tops were situated in the plant of Fibrinite Company,

in the city of Aberdeen. It will also be noticed that the court specifically found that, at the time of the taking, the table tops were packed in cartons, and the cartons were labeled for shipment. A portion of the cartons had previously been shipped to Tri-Way Industries, in Seattle, for and on behalf of appellants, and had been returned to appellants by Tri-Way. It will further appear that the court specifically found that appellants had paid in full for these table tops and title had passed to them, and the court further found the specific amount due.

It thus appears conclusively that the judgment which the trial court entered on September 5, 1947, was in fact the judgment which it intended to enter at that time, based upon what the court believed the evidence to show at the time of the making and entry of the findings, conclusions, and judgment.

Subsequently, as hereinbefore indicated, a motion to vacate the judgment and for new trial was filed by respondents, and thereafter, it appearing that there were in fact only eighty of the table tops actually labeled, and that the witness Rubyn had been mistaken in indicating and testifying otherwise, the court, after considerable argument by respective counsel, made and entered the judgment of October 10, 1947, hereinbefore set out. While the motion to vacate was specifically based upon the allegation of fraud practiced by appellants in obtaining the judgment, and while respective counsel for respondents argued at length that the court should incorporate in the judgment of October 10th that it was vacating and modifying the former judgment because of fraud, it will be noticed that the court made no such finding. In fact, the only reason appearing in the latter judgment for the court's action is that

". . . the judgment as entered did not correspond to the memorandum of decision, that the court adhered to its decision, as set forth in the memorandum and that the purported judgment of September 5, 1947, was not in fact the judgment of the court, and that such judgment should be modified accordingly."

As hereinbefore indicated, no actual change was made in the findings of fact and conclusions of law which had theretofore been filed in the case, but the judgment does order that the findings and conclusions of September 5th be modified accordingly.

The trial court denied respondents' motion for a new trial, from which there was no appeal.

■ It is first contended by appellants that the court erred in setting aside the judgment of September 5th, and entering the judgment of October 10th. We must agree with this contention of appellants. We find nothing in the latter judgment which, in our opinion, justified the court in vacating or modifying the judgment of September 5th. In other words, it is our opinion that the reason assigned by the trial court for entering the latter judgment is not a cause for vacation or modification named in Rem. Rev. Stat., §§ 303, 464, 465, and 466 [P.P.C. §§ 4-1, 71-1, -3, -5], as contended for by respondents, and the facts herein did not, in our opinion, show that this change is one which the court had the inherent power to make, regardless of any statute.

May we again state that, in our opinion, the situation here presented is just this: The original judgment was the judgment which the court made and intended to make upon the evidence as it was at that time, but subsequent to the entry of such judgment, it developed that the witness Rubyn had, either wilfully or unintentionally, stated that all of the tops claimed by appellants were labeled, when in fact it was found that only eighty of them were labeled. Under the authority, it would make no difference, in our opinion, whether Mr. Rubyn had unintentionally so stated, or whether he had wilfully perjured himself. It should be kept in mind that Mr. Rubyn was respondents' witness. If judgments could be vacated because it was subsequently discovered that a witness had testified falsely or mistakenly, there would be no end to litigation.

■ We stated in *Thomas & Co. v. Penland,* 148 Wash. 279, 268 Pac. 867, that

". . . even perjury is not a ground for vacating a judgment, at least unless it be connected with extrinsic or collateral fraud and the opposite party is free from all implication of want of diligence [citing authority]."

Also, in *Raisner v. Raisner*, 155 Wash. 52, 56, 283 Pac. 704, we stated:

"Notwithstanding some courts hold to the contrary, we have long held that perjury, not being specified in our statute as a distinctive ground for vacating a judgment without other extrinsic fraud, is not sufficient to annul a judgment. [Citing authority.]"

■ Again we say that we appreciate, as contended for by counsel for respondents, and as shown by authorities cited by them, that the court has the inherent power, under certain circumstances, of its own motion to correct judgments so that they will speak the truth; but that is not the situation here presented, as we view it, for, as stated, the judgment which was entered originally was entered upon testimony sufficient to justify the court in making the findings, conclusions, and judgment which it did. We are satisfied, therefore, that it does not appear that this case falls within any of the statutes relative to the vacation and modification of judgments. See *McCaffrey v. Snapp*, 95 Wash. 202, 163 Pac. 406; *Schmelling v. Hoffman*, 124 Wash. 1, 213 Pac. 478. In the last-cited case, we said, quoting from the case of *McCaffrey v. Snapp, supra:*

" 'But it is said that the court has inherent power to make its judgment speak the truth, and this it may do on its own motion at any time. The proposition as stated is no doubt true, but we cannot conceive that this is a case of that sort. If the court directs judgment for one party and the clerk enters it for another, or if the court directs a certain judgment and another and different judgment is entered, doubtless the court can order its correction when the matter is brought to its attention; but the error must appear on the face of the record; the court cannot, in this manner, correct or modify a judgment entered in accordance with its directions.' "

We are also satisfied that there was no intention on the part of Mr. Elmore to mislead the court in any way, and

it is apparent to us that the trial court did not believe there was any fraud practiced by appellants in obtaining the original judgment.

We are of the opinion that, regardless of the fact that only eighty table tops were found to be actually labeled, the evidence preponderates in favor of appellants that 295 table tops, as described in their complaint, had actually become their property, had been paid for under the plan hereinbefore specified, and had been set aside for them in a place designated; in other words, that prior to and at the time of the levy by the sheriff, the 295 table tops claimed by appellants had become their absolute property, and were not subject to levy by the sheriff in connection with the suit by Kelly, Inc., against Fibrinite Company.

We are further of the opinion that there is nothing to indicate that any conveyance was made or attempted from Fibrinite Company to appellants for the purpose of defrauding any creditors, but that the table tops here involved had been transferred and passed to appellants under the agreement had between those parties, entered into in good faith by the parties thereto.

In view of the conclusion reached herein, we do not feel it necessary to answer the other contentions of respondents. However, we may say in conclusion that we do not think this record shows that the trial court was induced by appellants to omit from the judgment a formal finding of fraud. It was a case where counsel for respondents were insisting that the trial court should insert a finding that the modification was based upon fraud practiced by appellants, and counsel for appellants were attempting to have the judgment entered without such a statement, and the court apparently after considering the contentions of both parties, refused to make any finding of fraud.

For the reason herein assigned, this case must be and it is remanded, with directions to the trial court to vacate

the judgment of October 10, 1947, and to reinstate the findings of facts, conclusions of law, and judgment of September 5, 1947.

MALLERY, C. J., BEALS, STEINERT, and ROBINSON, JJ., concur.