# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Respondent,<br><br>    v.<br><br>JERRY BRAND BOGART,<br><br>     Appellant. | DIVISION ONE<br><br>No. 84814-3-I<br><br>PUBLISHED OPINION |

DWYER, J. — Jerry Bogart appeals from the order of the superior court correcting a clerical mistake in the court's judgment and sentence document. On appeal, Bogart asserts that the superior court did not have the authority to correct the terms of his sentence as set forth in that document. Because the superior court has the authority to correct unintentional errors in its judgment entries and because the record amply supports that the court's correction to its judgment and sentence document embodied the terms of the sentence that the court originally intended to impose, Bogart's assertion fails. Accordingly, we affirm.

I

In October 2016, by amended information, the State charged Bogart with one count of assault with a firearm in the first degree (count I), two counts of unlawful possession of a firearm in the first degree (counts II and III), and one count of bail jumping (count IV).

The Honorable Janice E. Ellis presided over a jury trial on counts I through III. After both parties rested, the jury was provided with a verdict form for each of the three counts along with a special verdict form asking whether Bogart had been armed with a deadly weapon.[1] The jury convicted Bogart as charged on those three counts and found on the special verdict form that, in the course of committing count I, Bogart was armed with a deadly weapon. Later, Judge Ellis held a bench trial on count IV, the bail jumping charge. Bogart was also convicted of this offense.

At the resulting sentencing hearing, Judge Ellis again presided. The State requested that Bogart serve the sentence for count I consecutively to the sentences on the remaining counts. The State also requested that the court, in imposing its sentence for count I, include a 60-month firearm enhancement. Judge Ellis reviewed Bogart's extensive criminal history and, finding the existence of several aggravating factors, imposed an exceptional sentence above the standard range, stating that

> I am going to impose a sentence that will require you to serve the Count 1 sentence consecutive to the sentences that I am going to impose in Counts 2, 3 and 4, and of course, the deadly weapon finding that was also found by the jury as additional time beyond that.
> So with that foundation, this will be the judgment of the Court: Under Count 1, the Court will impose the high-end of 318 months; Count 2 and 3, the Court will impose a mid-range sentence of 101.5 months; Count 4, a low end of 72 months. Following the consecutive term of 318 months for Count 1 and a controlling sentence of 101.5 months on Counts 2 and 3, you will then serve

---

[1] The State purportedly intended to request that the court submit a special verdict form to the jury asking whether Bogart was armed with a firearm. Instead, the verdict form submitted actually asked the jury whether Bogart was armed with a deadly weapon.

60 months toward the deadly weapon enhancement. This totals 479 and a half months.

Judge Ellis later signed a judgment and sentence document ostensibly reflecting the terms of the sentence that the court intended to impose. The document indicated that the court was imposing an exceptional sentence for counts I through VI and a 60-month firearm enhancement. That document also detailed a total term of confinement of 479.5 months—378 months under count I (including the firearm enhancement), 101.5 months each for counts II and III, and 72 months for count IV. Notably, with regard to a section within that document reading that "All counts shall be served concurrently, except for the portion of those counts for which there is an enhancement as set forth above at ¶ 2.3, and the following counts which shall be served consecutively," the court did not inscribe a response.

Bogart appealed the superior court's judgment and sentence entered on his convictions to us, challenging, as pertinent here, the imposition of a firearm sentencing enhancement. The State conceded that the firearm enhancement was imposed in error. We ordered the vacation of that enhancement and remanded the matter for resentencing consistent with the jury's deadly weapon special verdict.

In August 2020, Judge Ellis presided over the resentencing hearing on remand. The State provided the court with an amended judgment and sentence document, copying "the Court's previous judgment and sentence precisely on[to] the new one," except, as pertinent here, "as opposed to having 60 months for a firearm enhancement added to the time on the Assault I, it is 24 months for just

3

the general deadly weapon enhancement, thus changing the amount of total time that Mr. Bogart is doing to 443-and-a-half months." Defense counsel indicated that he had already reviewed and signed off on that document.

The court entered the amended document, which detailed a total term of confinement of 443.5 months—342 months under count I (including a 24-month deadly weapon enhancement) and leaving the remaining sentences unchanged. The amended document again detailed that the court was imposing an exceptional sentence for counts I through IV but again omitted a response to the section concerning consecutive sentences.[2]

In January 2022, Judge Ellis notified the parties that the court "received notice from the Department of Corrections in this matter regarding concerns about a perceived error in the amended Judgment & Sentence."

In December 2022, Judge Ellis issued an order titled "Order Clarifying" that reads as follows:

> The Judgment and Sentence is clarified as follows: Judge Ellis found an exceptional sentence (see [Judgment and Sentence filed on February 12, 2018)]. Pursuant to this exceptional sentence, the court ran the time imposed in Count I (318 months + 24 months deadly weapon enhancement) consecutive to the time imposed in the remaining counts, for 443.5 months actually imposed. The time imposed in Counts II, III and IV runs concurrently (i.e., the court imposed 101.5 [months] on Count II, 101.5 [months] on Count III, and 72 [months] on Count IV. The time on Counts II-IV run concurrently. The time on Count I runs consecutively to Counts II-IV. Thus, the actual term of confinement is 443.5 [months] (342 [months] + 101.5 [months]).

(Capitalization omitted.)

---

[2] Bogart thereafter filed a personal restraint petition on grounds unrelated to the matter now on appeal, which we denied.

Bogart now appeals.

II

Bogart asserts that the superior court erred by correcting its judgment and sentence document. This is so, Bogart contends, because the court did not have authority to correct that document to reflect that the court had imposed consecutive sentences upon him. Because the superior court has authority to correct unintended errors in its judgment entries and because the record supports that the superior court originally intended to impose consecutive sentences as to certain of Bogart's convictions, we hold that the superior court's clarifying order properly brought its judgment and sentence documents into harmony with the sentencing terms that the court originally intended to impose. Thus, Bogart's assertion fails.

We review a challenge to the authority of the superior court de novo. See State v. Ammons, 105 Wn.2d 175, 180, 713 P.2d 719, as amended, 105 Wn.2d 175, 718 P.2d 796 (1986). We review a superior court's correction of clerical error under CrR 7.8(a) for abuse of discretion. State v. Crawford, 164 Wn. App. 617, 621, 267 P.3d 365 (2011) (citing State v. Gomez–Florencio, 88 Wn. App. 254, 258, 945 P.2d 228 (1997)). We additionally review a superior court's application of its inherent power to amend and reform its judgment entry for abuse of discretion. Litzell v. Hart, 96 Wash. 471, 472, 477-78, 165 P. 393 (1917).

A

Bogart's assertion on appeal requires that we review the superior court's authority to correct clerical errors in its own documents. We have recognized that the court's authority in this regard is identical in both criminal and civil matters. See State v. Snapp, 119 Wn. App. 614, 626-27, 82 P.3d 252 (2004) (citing Presidential Ests. Apt. Assocs. v. Barrett, 129 Wn.2d 320, 326, 917 P.2d 100 (1996); State v. Klump, 80 Wn. App. 391, 397, 909 P.2d 317 (1996); CR 60(a); CrR 7.8(a)). On the topic of clerical errors in judgments, a well-respected authority on civil rules in Washington once observed that,

> [t]o be distinguished from the vacation or setting aside of a judgment is the correction of a judgment because of a clerical error. This involves the matter of amending the judgment to make it correspond to the facts and law as actually decided and applied. It has long been established in Washington that a court has inherent power to modify a judgment entry to make it conform to the judgment actually rendered.

Philip A. Trautman, *Vacation and Correction of Judgments in Washington*, 35 WASH. L. REV. 505 (1960) (citing Pappas v. Taylor, 138 Wash. 31, 244 P. 393 (1926); Fisher v. Jackson, 120 Wash. 107, 206 P. 929 (1922); Litzell, 96 Wash. 471; Shaughnessy v. Northland S.S. Co., 94 Wash. 325, 162 P. 546 (1917)).[3]

---

[3] In Bernard v. Abel, 156 F. 649 (9th Cir. 1907), the Ninth Circuit also recognized this well-established power:

> This principle is distinctly stated in Matheson's Adm'r v. Grant's Adm'r, [43 U.S. 263, 264,] 2 How. 263, 11 L. Ed. 261 [(1844)]. "It is a familiar doctrine," said the Supreme Court in Insurance Co. v. Boon, 95 U.S. 117, [5 Otto 117,] 24 L. Ed. 395 [(1877)], "that courts always have jurisdiction over their records to make them conform to what was actually done at the time; and, whatever may have been the rule announced in some of the old cases, the modern doctrine is that some orders and amendments may be made at a subsequent term, and directed to be entered, and become of record, as of a former term."
>
> This power is one to make the record speak the truth. It is salutary, and enables courts to prevent injustice through mere mistake or inadvertence of the judge, or counsel, or the clerk.

The leading case in Washington, in the view of Professor Trautman,

> is O'Bryan v. American Investment & Improvement Co.[, 50 Wash. 371, 97 P. 241 (1908)]. A judgment was entered dismissing an action. Several months later a petition was filed to have the judgment corrected to read that the dismissal was without prejudice. An order to this effect had been entered in the minutes prior to the entry of the judgment. The supreme court reversed the trial court's denial of the requested relief and set forth the principle of inherent power, independent of any statute.

Trautman, supra, at 505 (footnote omitted). In O'Bryan, our Supreme Court instructed that the superior court's inherent power enables it "to so modify its judgment entry as to make it conform to the judgment actually entered at any time when to do so will not affect substantial rights of innocent third persons who have acted on the faith of the entry." 50 Wash. at 374. The court's ability to correct its judgment entries flows from the court's "inherent power to make its judgments conform to the truth." State ex rel. N. Pac. Ry. Co. v. Superior Court for King County, 101 Wash. 144, 147, 172 P. 336 (1918); accord Huseby v. Kilgore, 32 Wn.2d 179, 192, 201 P.2d 148 (1948); Penchos v. Ranta, 22 Wn.2d 198, 206, 155 P.2d 277 (1945); Callihan v. Dep't of Lab. & Indus., 10 Wn. App. 153, 156-57, 516 P.2d 1073 (1973). Therefore, "if the court directs a certain judgment and another and different judgment is entered, this may be corrected." Trautman, supra, at 505 (citing McCaffrey v. Snapp, 95 Wash. 202, 207-08, 163 P. 406 (1917)).[4] See, e.g., Gordon v. Hultin, 146 Wash. 61, 65, 261 P. 785 (1927) ("[T]he record renders it apparent that it was a mere clerical error in the

---

Abel, 156 F. at 652.

[4] See also Bernard, 156 F. at 652-53 (noting that it is within the power of a court to amend its record of a judgment at a subsequent term to prevent injustice through a mistake or inadvertence of the judge or counsel or the clerk, as by correcting the wording of an order of dismissal which by mistake did not conform to the motion on which it was based).

drafting of the decree, which would have been corrected at that time had the court's attention been called to it by counsel."); Litzell, 96 Wash. at 477-78 (where original decree was not decree actually rendered and intended to be rendered by the court, court has inherent power to modify judgment entered to make it conform to judgment actually rendered).  In correcting its judgment entry, the court may do so

> "on its own motion at any time. . . .  If the court directs judgment for one party, and the clerk enters it for another, or if the court directs a certain judgment and another and different judgment is entered, doubtless the court can order its correction when the matter is brought to its attention; but the error must appear on the face of the record; the court cannot, in this manner, correct or modify a judgment entered in accordance with its directions."

Huseby, 32 Wn.2d at 192 (quoting McCaffrey, 95 Wash. at 207-08).

In addition to the superior court's inherent power to correct its own judgment, the superior court has been granted similar authority as set forth in both CR 60(a) and CrR 7.8(a).  See Trautman, supra, at 506 ("This inherent power is now embodied in Washington Rule of Pleading, Practice and Procedure 60."); Snapp, 119 Wn. App. at 626-27 (citing CrR 7.8(a)).

The civil rule reads as follows:

> **Clerical Mistakes**. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

CR 60(a).  The identical criminal rule provides that:

8

> **Clerical Mistakes.** Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

CrR 7.8(a).

It must be noted, however, that "[a] distinction exists between a clerical error," which may be corrected under the applicable rule, "and a judicial error, which may not." See In re Marriage of Stern, 68 Wn. App. 922, 927, 846 P.2d 1387 (1993). Our Supreme Court has instructed that,

> [i]n deciding whether an error is "judicial" or "clerical," a reviewing court must ask itself whether the judgment, as amended, embodies the trial court's intention, as expressed in the record at trial. Marchel v. Bunger, 13 Wn. App. 81, 84, 533 P.2d 406, review denied, 85 Wn.2d 1012 (1975). If the answer to that question is yes, it logically follows that the error is clerical in that the amended judgment merely corrects language that did not correctly convey the intention of the court, or supplies language that was inadvertently omitted from the original judgment. If the answer to that question is no, however, the error is not clerical, and, therefore, must be judicial. Thus, even though a trial court has the power to enter a judgment that differs from its oral ruling, once it enters a written judgment, it cannot, under CR 60(a), go back, rethink the case, and enter an amended judgment that does not find support in the trial court record.

Presidential Ests. Apt. Assocs., 129 Wn.2d at 326; accord Wilson v. Henkle, 45 Wn. App. 162, 167, 724 P.2d 1069 (1986). Indeed,

> [w]hether a trial court intended that a judgment *should have a certain result* is a matter involving legal analysis and is beyond the scope of CR 60(a). The rule is limited to situations where there is a question whether a trial court intended to enter the judgment that was actually entered.

Presidential Ests. Apt. Assocs., 129 Wn.2d at 326 n.5.

In addition to reviewing the record to determine the trial court's original intent, we consider whether the judge who corrected the document in question is also the judge who rendered the decision that such document purported to memorialize. In re Marriage of Getz, 57 Wn. App. 602, 604-05, 789 P.2d 331 (1990). Additionally, we may consider the trial court's oral opinion

> to supplement or amplify, but not to contradict, the findings of fact as entered. Lakeside Pump & Equip., Inc. v. Austin Constr. Co., 89 Wn.2d 839, 843 n.1, 576 P.2d 392 (1978). An ambiguous finding may be clarified by resort to the oral opinion. State v. Knowles, 46 Wn. App. 426, 430, 730 P.2d 738 (1986).

Getz, 57 Wn. App. at 605 n.4.

As pertinent to the matter before us, "[w]hether a clerical error exists under CrR 7.8 is the same test used to determine a clerical error under CR 60(a), the civil rule governing amendment of judgments." Snapp, 119 Wn. App. at 626-27 (citing Klump, 80 Wn. App. at 397; Presidential Ests. Apt. Assocs., 129 Wn.2d at 326); see also State v. Rooth, 129 Wn. App. 761, 770, 121 P.3d 755 (2005). Indeed, in State v. Snapp, Division Two of this court reviewed the trial record at issue and rejected Snapp's contention that the superior court "lost the authority to amend the judgment" document to include a certain sentencing provision, concluding that the trial court "merely corrected Snapp's judgment and sentence [document] to include the previously imposed [sentencing provision]." 119 Wn. App. at 626-27. That was so, the appellate court in Snapp concluded, because the clerk's minutes established the trial "court's original intention to include this provision, its omission was a clerical error and the trial court had the authority to

10

correct the judgment and sentence document to reflect its original intention." 119 Wn. App. at 627.

Conversely, in State v. Rooth, again in Division Two, the appellate court determined that, although the sentence entered by the trial court therein was predicated on an alleged defect in the jury's verdicts, there was "[n]othing in the record" to support the proposition that the court intended to impose a different sentence. 129 Wn. App. at 770-71. Therefore, the appellate court concluded, the error arising from the resulting sentence imposed by the trial court constituted a judicial error, rather than a clerical one. Rooth, 129 Wn. App. at 770-71.

B

The record herein reflects that the superior court originally intended to impose consecutive sentences upon Bogart. As an initial matter, Judge Ellis presided over the pertinent events in this matter, originally sentencing Bogart at the sentencing hearing, signing the judgment and sentence document (and the amended judgment and sentence document) entered on his convictions, and issuing the order correcting those documents. Given that Judge Ellis—by originally sentencing Bogart—was in the best position to identify the original sentence that the court intended to impose against Bogart, her issuance of an order correcting the document in question supports that the court originally intended to impose the consecutive sentences discussed herein.

The judgment and sentence documents also support such an original intention by the court. Given that the amended judgment and sentence document reflects that the court imposed a total term of confinement of 443.5

11

months, the only plausible way to reach such a total with the individual terms of confinement detailed therein is by adding the term of 318 months imposed for count I, plus the term of 24 months imposed for the deadly weapon enhancement, and plus the term of 101.5 months imposed for the controlling sentence (from counts II through IV running concurrently). Bogart does not provide any other explanation as to how the superior court could have arrived at such a total. Indeed, if the superior court intended for those convictions to run concurrently, then it likely would have indicated a total term of confinement of 318 months (with the controlling sentence arising from count I), rather than the 443.5 months of total confinement actually detailed in the document entered. Furthermore, the judgment and sentence documents identified that, due to aggravating factors found by the court at sentencing, the court was imposing an exceptional sentence above the standard range for counts I through IV. However, the terms of confinement imposed on each count were within the applicable standard ranges. This suggests that the sentence was exceptional not because of the imposition of certain individual terms of confinement outside of the standard ranges but, rather, because the superior court intended to impose certain sentences to be served consecutively to one another.

Lastly, even if the sentencing terms set forth in the amended judgment and sentence were ambiguous—which they are not—the court's oral opinion would clearly resolve any ambiguity. Indeed, the court twice verbally identified that it was imposing the count I sentence to be served consecutively to the sentences for the remaining counts, and the sentencing court's only verbal

12

reference to a concurrent sentence was a reference to the concurrent sentences imposed on counts II through IV, with a controlling sentence of 101.5 months. Furthermore, during the hearing, the superior court's rulings regarding its aggravating factor findings, its imposition of an exceptional sentence, its imposition of consecutive sentences, and its description of the terms of confinement supplement and amplify—rather than contradict—the findings and terms of sentencing set forth in the superior court's judgment and sentence documents. Thus, the similarities—and absence of contradictions—between the superior court's oral rulings and its findings set forth in the judgment and sentence documents support a conclusion that the court originally intended to impose the consecutive sentences discussed herein.

Therefore, the record plainly reflects that the superior court originally intended to impose the sentence for count I (including the deadly weapon enhancement) to be served consecutively to the sentences for the remaining counts. Omission of the consecutive sentencing term from the judgment and sentence document was a clerical error. The superior court had the authority to correct the judgment and sentence document to reflect its original intention. Snapp, 119 Wn. App. at 627.[5]

---

[5] Bogart nevertheless asserts that the superior court erred because the court did not have the authority to substantially alter the terms of his sentence. In so doing, Bogart relies on certain decisional authority for the proposition that a court's power to determine the terms of a sentence arises at the time of sentencing and is generally not subject to later modification. See, e.g., State v. Hubbard, 1 Wn.3d 439, 445, 527 P.3d 1152 (2023); State v. Shove, 113 Wn.2d 83, 86, 776 P.2d 132 (1989). Bogart's reliance on such authority is unavailing.

Correction of an unintended error in a judgment and sentence document does not constitute a substantial modification to the underlying terms of a defendant's sentence. Rather, such a correction merely seeks to harmonize the written document with the judgment and sentence originally intended by the sentencing court. Here, because it was the sentencing court's original intention to impose certain sentences consecutively, the court did not substantially alter

Thus, the superior court did not abuse its discretion by correcting an error in its judgment and sentence documents. Accordingly, the superior court did not err in so doing.[6]

Affirmed.

Dwyer, J.

WE CONCUR:

Díaz, J.                    Chung, J.

---

Bogart's underlying sentence when it corrected a clerical mistake in its judgment and sentence document. Rather, in so doing, the sentencing court aligned the writing with the sentencing terms that the court originally intended to impose. Thus, Bogart's assertion fails.

[6] The State asserts that Bogart may not appeal from the trial court's correction of a clerical error. Given our disposition of this matter, we decline to address that assertion. We note, however, the plethora of authority cited in this opinion in which appeals were taken in this very situation without even a discussion of such a proposition being deemed to merit reasoned analysis.