FILED
1/22/2024
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of:

KATHY JO ROHRS,

                Appellant,

and

JOEL DAMON ROHRS,

                Respondent.

DIVISION ONE

No. 84708-2-I

UNPUBLISHED OPINION

DWYER, J. — Kathy Rohrs appeals from an order of the superior court confirming an arbitration award and correcting a qualified domestic relations order (QDRO) previously entered by the court. On appeal, Kathy asserts that the superior court erred by confirming the arbitration award because, she avers, several statutory bases exist upon which the superior court should have vacated the award. Kathy also asserts that the superior court erred by correcting its QDRO because, she contends, the court did not have the authority to correct its own judgment entry and did not follow certain civil rule and statutory requirements in so doing. Finding no error, we affirm.

I

On January 12, 2021, Kathy filed a petition in the superior court seeking the dissolution of her marriage to Joel. Twelve months later, in December 2021, Kathy and Joel participated in private mediation with their respective legal counsel and retired Judge Palmer Robinson. During the mediation, Kathy and

Joel reached an agreement as to the division of their marital property and obligations. The parties' agreement was initially memorialized in a writing captioned as a "CR2A Stipulation and Agreement." The initial writing reflected, in pertinent part, the parties' agreement that

> [Kathy][1] shall receive the following property: . . . [Joel's] John Hancock 401(k) funds at the time the Decree is entered. No distributions or changes in investment will be made by [Joel] to this account until the QDRO is recognized by the Plan Administrator and the monies are segregated for [Kathy]).[2]
> . . . .
> [Joel] shall receive the following property: . . . [Joel's] [Phantom Stock Appreciation Plan (PSAP)] with his employer[.] [Joel's] Profit Sharing-Pooled Funds with his employer.

The writing reflected the parties' agreement that Kathy was to receive a segregation of monies from Joel's John Hancock 401(k) funds—i.e., his employee contributions to his 401(k) plan—and that Joel would retain the remainder of the funds therein (his employer's stock and profit-sharing contributions thereto).

The initial writing also reflected the parties' intent that Judge Robinson act as arbitrator in any disputes arising during the memorialization of their original agreement:

> Any disputes in drafting or implementation of the final documents or as to omitted issues shall be submitted to [retired] Judge Palmer Robinson for binding arbitration. The parties agree that the arbitrator has authority to resolve disputes as to implementation of this Agreement, all authority of Judge Palmer Robinson to arbitrate terminates upon entry of the final documents unless otherwise agreed in writing.

---

[1] For clarity, we have replaced "Petitioner" or "Wife" with "Kathy" and replaced "Respondent" or "Husband" with "Joel" in several of the writings at issue on appeal.

[2] As applicable here, a QDRO entered by a superior court is a legal instrument that would create and recognize Kathy's right to receive some portion of Joel's retirement plan benefits.

2

This provision reflected the parties' agreement that Judge Robinson's authority to act as arbitrator would terminate when their final writings were entered as an order of the superior court, unless the parties agreed otherwise in a later writing.

Between December 2021 and March 2022, Kathy and Joel submitted several disputes to Judge Robinson while attempting to reduce their agreement to a subsequent writing.

In late March 2022, Judge Robinson reviewed the parties' subsequent writing, captioned as a "Property Settlement Agreement," and approved it as consistent with their agreement.[3] The Property Settlement Agreement incorporated the terms and conditions of their CR 2A Stipulation and Agreement. It set forth, in pertinent part, the parties' agreement that

> [Kathy] shall be granted and conveyed the following property, free and clear of any right, title or interest of [Joel] therein:
> . . . .
> B. All interest (100%) in the assets held in the Andersen Construction 401(k) Plan (John Hancock account X4145) in [Joel's] name as of the dater [sic] of the [CR 2A agreement], December 6, 2021, including any gains and losses thereon on that amount, until transferred to [Kathy] by QDRO. . . .
> . . . .
> [Joel] shall be granted and conveyed the following property, free and clear of any right, title or interest of [Kathy] therein:
> . . . .
> C. All interest (100%) in the Andersen Construction Phantom Stock Appreciation Plan in [Joel's] name.
> D. All interest (100%) in the Andersen Construction Profit Sharing Pooled Funds in [Joel's] name.

Consistent with the initial writing, the division of Joel's 401(k) fund contributions in the parties' subsequent writing mirrored their original agreement.

---

[3] Judge Robinson required Kathy to pay 80 percent—rather than 50 percent—of the arbitration costs due to her intransigence during the arbitration.

Their subsequent writing also contained a new arbitration provision:

> Any dispute or misunderstanding arising out of or in connection with this Agreement, its implementation and operation, or unresolved or omitted issues shall be resolved by binding arbitration as set forth below:
> There shall be a single arbitrator who shall be Judge (ret.) Palmer Robinson . . . .  The decision of the Arbitrator shall be final and binding on the Parties pursuant to RCW 7.04(A).
> . . . .
> The Arbitrator shall have full authority to make an award in the form of injunctive or other equitable relief, as well as damages or other monetary awards, and any such award shall be fully enforceable by any court of competent jurisdiction.

The subsequent writing's arbitration provision did not have an end date or a condition terminating the arbitrator's authority to act as arbitrator in disputes arising from the memorialization of the parties' agreement.  This provision, in light of the arbitration provision in the parties' initial writing, reflected Kathy's and Joel's written agreement that Judge Robinson's authority to act as arbitrator would continue even after the superior court entered the parties' final writings as an order of the court.

In late March and early April 2022, Kathy and Joel submitted their Property Settlement Agreement to the superior court, which the court signed and entered as the court's order.  Shortly thereafter, Kathy drafted a QDRO.[4]  The sixth paragraph, regarding the assets that Kathy was purportedly entitled to receive, reads as follows:

> The portion of [Joel's] Plan benefits payable to [Kathy] under this QDRO is 100% of assets credited to [Joel's] account segregated as of the date December 6, 2021, [plus earnings and losses to the

---

[4] Although the parties' initial writing provided that Joel's counsel would draft the QDRO, Kathy's counsel drafted the QDRO instead.

4

date of distribution] to [Kathy]. The balance of the assets credited to [Joel's] account shall remain [Joel's].

(Fourth alteration in original.) The paragraph did not mirror the language of Kathy's and Joel's earlier writings.

On April 21, 2022, the superior court entered its judgment, signing its findings of fact, conclusions of law, and its decree of dissolution. Each judgment entry incorporated Kathy's and Joel's Property Settlement Agreement, itself a memorialization of their original agreement.

Five days later, on April 26, 2022, the superior court entered as an order of the court the QDRO drafted by Kathy and signed by both parties. In doing so, the superior court entrusted that the QDRO was in harmony with the court's decree and the Property Settlement Agreement incorporated therein.

The following month, Joel was informed that the trustee plan administrator for Joel's employer's benefits plan had reviewed the QDRO but that, as written, the plan administrator could not process the QDRO for assignment of Joel's 401(k) plan contributions to Kathy.[5] Counsel for Joel's employer suggested a correction to paragraph 6 of the QDRO that would make clear that the funds to be assigned to Kathy were only those funds that Joel himself had contributed to his 401(k) account (along with any investment earnings or losses), rather than a combination of both Joel's contributions and his employer's contributions. The language proposed by his employer's counsel reads as follows:

"The portion of [Joel's] Plan benefits awarded to [Kathy] under this QDRO is 100% of the amount credited to [Joel's] Plan account

---

[5] Joel's counsel promptly notified Kathy's counsel of the trustee plan administrator's rejection of the QDRO.

5

attributable to elective employee contributions under the Plan's cash or deferred arrangement, as of December 6, 2021, adjusted for any investment earnings or losses until the date of distribution to [Kathy]. The balance of the benefit credited to [Joel's] Plan Account (i.e., amount attributable to employer-funded contributions) shall remain [Joel's]."

Thereafter, Joel drafted an amended QDRO containing the suggested language. Its sixth paragraph reads as follows:

The portion of [Joel's] Plan benefits payable to [Kathy] under this QDRO is 100% of the amount credited to [Joel's] Plan account attributable to elective employee contributions, as of the date December 6, 2021, adjusted for any investment earnings or losses until the date of distribution to [Kathy]. The balance of the assets credited to [Joel's] account (i.e. employer-funded "Profit Sharing Trust" contributions) shall remain [Joel's].

Joel sought to obtain Kathy's signature on the amended QDRO. Kathy did not sign it.

In July 2022, Joel sent the draft amended QDRO to the trustee plan administrator, and the plan administrator indicated that, as amended, it was able to process the QDRO for assignment of Joel's 401(k) plan contributions to Kathy. Joel again sought to obtain Kathy's signature on the amended QDRO. Kathy again did not sign it.

In August 2022, Joel submitted the dispute regarding the amended QDRO to arbitration before Judge Robinson. Joel requested that Judge Robinson, as the parties' designated fact finder, review the amended QDRO to determine whether it was consistent with their original agreement as he and Kathy had memorialized in their earlier writings.[6] Kathy's counsel, in a letter, responded

---

[6] Joel's counsel also requested an award of attorney fees and costs, due to Kathy's actions and her intransigence.

6

that (1) per the parties' CR 2A Stipulation and Agreement, the arbitrator's authority to act as arbitrator had expired when the superior court entered its dissolution decree, (2) Joel did not properly initiate a new arbitration proceeding, and (3) the plan administrator for Joel's employment benefits had breached a fiduciary duty owed to Kathy.

In late August 2022, Judge Robinson issued her arbitration award. Judge Robinson determined that, upon review of the arbitration provisions in Kathy's and Joel's earlier writings, she retained the authority to act as arbitrator in their submitted dispute even after the superior court had entered its dissolution decree. Judge Robinson also found that

> [b]oth the CR2A and the property settlement agreement provide that [Kathy] will get, among other things, 100% of the assets in the Andersen Construction 401(k) Plan (John Hancock account x4145) and that [Joel] will get 100% of the Andersen Construction Profit Sharing Pooled Funds and 100% of the Andersen Construction Phantom Stock Appreciation Plan (referred to as PSAP in the CR2A Agreement).

> The original QDRO provided, in paragraph 6, "The portion of [Joel's] Plan benefits payable to [Kathy] under this QDRO is 100% of assets credited to [Joel's] account segregated as of the date . . ." After the QDRO was entered, the plan administrator stated that they could not process the QDRO as currently written and suggested alternate language[.]

Judge Robinson quoted the correction to paragraph 6 suggested by counsel for Joel's employer and continued:

> [Joel] is asking for an order approving his proposed Amended QDRO to substitute that language in Paragraph 6. [Kathy's] Objection and Response does not address the specifics of the proposed language or argue that the proposed language does not accurately reflect the agreement of the parties.

7

> Rather, the Objection and Response challenges the authority of the undersigned to act. I have dealt with that argument. [Kathy] also argues that [Joel] did not properly initiate arbitration. However, this is not a new proceeding requiring service of process to obtain jurisdiction. The parties already agreed to arbitration as part of ongoing litigation. [Kathy] also challenges actions of the Plan Administrator. I agree that those arguments are outside my authority.
>
> Because none of the arguments raised by [Kathy] dispute that the proposed language accurately reflects the agreement of the parties in both the CR2A and the Property Settlement Agreement, I find it appropriate to award attorney's fees to [Joel] in an amount to be determined on written motion, without oral argument.

Thus, the arbitrator determined that the substitute language in the amended QDRO reflected the parties' original agreement as provided in their initial and subsequent writings. Joel requested that Kathy sign the amended QDRO approved by the arbitrator, but she did not do so.[7]

In October 2022, Joel filed a motion in the superior court requesting that the court, without oral argument, confirm the arbitration award, enter the amended QDRO, and grant him an award of attorney fees. Kathy's counsel filed a response, arguing that Kathy was not properly served with notice of the initiation of an arbitration proceeding and that the superior court did not have authority to amend the previously entered QDRO.[8]

The superior court confirmed Judge Robinson's arbitration award approving the amended QDRO. Having thereby apprised itself that its previously

---

[7] Rather, Kathy's counsel responded that he was never authorized by Kathy to represent her in the amended QDRO dispute arbitration and that he was obligated to file a motion to vacate the arbitration award.

[8] Kathy also requested that the superior court consolidate her response to Joel's motion with a motion to vacate the arbitration award that she had purportedly filed. The superior court denied her request, finding that "while [Kathy's response to Joel's motion] states a Motion to Vacate Arbitration Award has been filed and ask[s] the court to consolidate the two motions, a review of the court docket indicates that no such motion has been filed."

entered QDRO was inconsistent with its judgment, the superior court entered "the Amended QDRO separately in conformance with the arbitration award," thereby correcting the language of its previously entered QDRO with the language of the amended QDRO.[9]

Kathy now appeals.

II

Kathy asserts that the superior court erred by confirming the arbitration award. This is so, she contends, because several statutory bases exist upon which the superior court should have vacated the arbitration award. The arbitral award should have been vacated, according to Kathy, because (1) the arbitrator abused her arbitral powers by approving the amended QDRO, (2) the arbitration notice provided to her attorney did not properly notify her of the arbitration dispute, and (3) the arbitrator committed misconduct by not providing certain procedural protections to her. We disagree.

We recently set forth the standard of review of an arbitration decision:

> Under Washington law, "[c]ourts will review an arbitration decision only in certain limited circumstances, such as when an arbitrator has exceeded [their] legal authority." Int'l Union of Operating Eng'rs v. Port of Seattle, 176 Wn.2d 712, 720, 295 P.3d 736 (2013). "To do otherwise would call into question the finality of arbitration decisions and undermine alternative dispute resolution." Int'l Union of Operating Eng'rs, 176 Wn.2d at 720. Our review of an arbitrator's award is "limited to the same standard applicable in the court which confirmed, vacated, modified, or corrected that award." Salewski v. Pilchuck Veterinary Hosp., Inc., 189 Wn. App. 898, 903, 359 P.3d 884 (2015). We review only whether one of the statutory grounds to vacate an award exists. Salewski, 189 Wn. App. at 903-

---

[9] The superior court also awarded to Joel attorney fees and costs for his motion based on RCW 7.04A.250 and Kathy's intransigence.

9

04. The party challenging the award bears the burden of showing such grounds exist. Cummings v. Budget Tank Removal & Env't Servs., LLC, 163 Wn. App. 379, 388, 260 P.3d 220 (2011).

State v. Am. Tobacco Co., No. 84265-0-I, slip op. at 26 (Wash. Ct. App. Oct. 16, 2023), https://www.courts.wa.gov/opinions/pdf/842650.pdf.

1

Kathy first asserts that she is entitled to vacatur of the arbitration award because Judge Robinson's approval of the amended QDRO exceeded her arbitral powers, contrary to RCW 7.04A.230(1)(d). We disagree.

We recently discussed the "'narrow [statutory] circumstances for vacatur of an arbitral award'" in which the "'arbitrator exceeded the arbitrator's powers.'" Am. Tobacco Co., slip op. at 26 (quoting RCW 7.04A.230(1)(d)). There, we stated that, "[i]n considering a motion to vacate on this ground, we examine whether there is *an error of law* 'on the face of the award' that goes to the arbitrator's decision." Am. Tobacco Co., slip op. at 26 (emphasis added) (quoting Salewski, 189 Wn. App. at 904). To be sure, "[u]nless the [arbitrator's] award on its face shows *adoption of an erroneous rule or a mistake in applying the law*, the award will not be vacated or modified." Harris v. Grange Ins. Ass'n, 73 Wn. App. 195, 198, 868 P.2d 201 (1994) (emphasis added) (citing N. State Constr. Co. v. Banchero, 63 Wn.2d 245, 249-50, 386 P.2d 625 (1963)).[10] Indeed, "[b]arring a statutory basis for vacating an arbitration award, the general rule is that '[a]rbitrators, when acting under the broad authority granted them by both the

---

[10] "'Limiting judicial review to the face of the award is a shorthand description for the policy that courts should accord substantial finality to arbitrator decisions.'" Am. Tobacco. Co., slip op. at 26-27 (quoting Federated Servs. Ins. Co. v. Pers. Representative of Est. of Norberg, 101 Wn. App. 119, 123, 4 P.3d 844 (2000)).

agreement of the parties and the statutes, become the judges of both the law and the facts.'" Am. Tobacco Co., slip op. at 27 (quoting Banchero, 63 Wn.2d at 249); see also Pegasus Constr. Corp. v. Turner Constr. Co., 84 Wn. App. 744, 749, 929 P.2d 1200 (1997) (citing Boyd v. Davis, 127 Wn.2d 256, 263, 897 P.2d 1239 (1995)). This is because "[a]rbitration's desirable qualities would be heavily diluted, if not expunged, if a trial court reviewing an arbitration award were permitted to conduct a trial de novo." Boyd, 127 Wn.2d at 263.

Here, during arbitration, Judge Robinson reviewed the parties' initial and subsequent writings and found that Kathy did not dispute that the language of the amended QDRO reflected the parties' original agreement as memorialized in their writings. Finding no meaningful dispute on the matter, Judge Robinson therefore approved the amended QDRO as consistent with Kathy's and Joel's original agreement.

In so doing, the arbitrator did not exceed her powers. The parties had contracted for Judge Robinson to act as fact finder in arbitration of any disputes arising from their original agreement.[11] Judge Robinson was acting pursuant to that authority in reviewing their writings—the QDRO drafted by Kathy's attorney and the amended QDRO—for consistency with their original agreement and their

---

[11] Kathy asserts that the parties' initial writing did not grant the arbitrator the authority to act as arbitrator once final orders were entered by the court. However, Kathy does not contest—or meaningfully dispute—that their subsequent writing granted the arbitrator authority to act as arbitrator without limiting the arbitrator's authority to when the court entered its final orders. Therefore, Kathy's and Joel's writings reflected their intent that the arbitrator's authority to act as arbitrator would survive entry of final orders. See Berman v. Tierra Real Est. Grp., LLC, 23 Wn. App. 2d 387, 394, 515 P.3d 1004 (2022) (Washington courts apply a "'strong presumption in favor of arbitrability,'" and "'[d]oubts should be resolved in favor of coverage'" (alteration in original) (internal quotation marks omitted) (quoting Peninsula Sch. Dist. No. 401 v. Pub. Sch. Emps. of Peninsula, 130 Wn.2d 401, 414, 924 P.2d 13 (1996))). Kathy's assertion fails.

memorializations of those writings. By finding that there was not a meaningful factual dispute regarding whether the amended QDRO reflected the parties' original agreement, Judge Robinson acted squarely within her broad authority as the parties' designated arbitrator in approving the amended QDRO.

Kathy nevertheless asserts that, because Judge Robinson approved the amended QDRO after the superior court's dissolution decree had been entered, Judge Robinson's approval constituted a modification of the QDRO and, therefore, was a modification of the parties' marital property division.

This argument is without merit. When Joel submitted their dispute to arbitration, he was not calling upon the arbitrator to make a legal determination.[12] As discussed above, his request that the arbitrator approve the amended QDRO was a request for a factual determination by the parties' designated fact finder. Because the arbitral decision challenged by Kathy was a factual determination, not a legal determination, Kathy's assertion does not implicate an arbitral error of law subject to our review.[13] See Am. Tobacco Co., slip op. at 26 (quoting Salewski, 189 Wn. App. at 904). Kathy fails to establish that the arbitrator exceeded her arbitral powers. Accordingly, we conclude that Kathy has not

---

[12] The record does not suggest that Joel was asking the arbitrator to reopen or modify the QDRO entered by the superior court. Nor, for that matter, could the arbitrator do so. Indeed, neither Kathy nor Joel contest that the authority to reopen and modify an order of the superior court resides with the superior court, not with a private arbitrator.

[13] If Kathy is instead asserting that the arbitrator's finding was erroneous, that assertion fails as well. When parties agree to submit their disputes to arbitration, the arbitrator becomes the judge of law and facts. Am. Tobacco Co., slip op. at 27 (quoting Banchero, 63 Wn.2d at 249). Once a dispute is covered by a parties' arbitration agreement, barring a statutory basis for vacatur, we do not second-guess the parties' contracted-for agreements. Boyd, 127 Wn.2d at 263 (in reviewing an arbitration award, we do not "conduct a trial de novo"). Moreover, in arbitration and before the superior court, Kathy did not meaningfully dispute whether the amended QDRO reflected the parties' original agreement. Thus, Kathy's assertion fails.

established that Judge Robinson exceeded her powers by approving the amended QDRO.[14]

2

Kathy next asserts that she is entitled to vacatur of the arbitration award because the arbitration in question was conducted without proper notice of the initiation of an arbitration so as to substantially prejudice her rights. This is so, Kathy contends, because when Joel notified her designated legal counsel, Dennis McGlothin, of having submitted their amended QDRO dispute to arbitration, he was no longer Kathy's designated counsel in arbitration matters. This contention is devoid of merit.

The notice provision in the arbitration award vacatur statute sets forth that

(1) [u]pon motion of a party to the arbitration proceeding, the court shall vacate an award if:
. . .
(f) The arbitration was conducted without proper notice of the initiation of an arbitration as required in RCW 7.04A.090 so as to prejudice substantially the rights of a party to the arbitration proceeding.

RCW 7.04A.230.

---

[14] Kathy also asserts that she is entitled to relief pursuant to RCW 7.04A.230(1)(d) because one of the arbitrator's factual findings was that the plan administrator rejected Kathy's QDRO and, according to Kathy, the plan administrator's rejection of Kathy's QDRO violated the Employee Retirement Income Security Act of 1974 (ERISA), codified at 29 U.S.C., ch. 18. Kathy here misses the mark. RCW 7.04A.230(1)(d) regards vacatur of an arbitration award due to an *arbitrator* exceeding their arbitral powers. The plan administrator is not the arbitrator, and Kathy provides no decisional authority in support of such a conflation.

Additionally, Kathy vaguely asserts that a purportedly erroneous determination by the plan administrator somehow deprived the superior court of its authority and subject matter jurisdiction over confirmation of the arbitration award in this matter. However, Kathy provides no relevant decisional authority in support of this far-reaching proposition. Accordingly, Kathy's assertions fail.

Here, during the amended QDRO arbitration, Kathy asserted, as she does now on appeal, that she did not receive proper notice of the initiation of arbitration because her designated counsel was not her designated counsel when Joel submitted the dispute to arbitration. Judge Robinson rejected these assertions, finding that "this is not a new proceeding requiring service of process to obtain jurisdiction. The parties already agreed to arbitration as part of ongoing litigation." On appeal, Kathy urges us to determine that Joel's letter to the arbitrator, a copy of which he sent to Kathy's counsel, did not properly notify her of the initiation of arbitration.

We have noted that, once a dispute can fairly be said to be covered by the parties' arbitration agreement, "'any inquiry by the courts must end.'" Berman v. Tierra Real Est. Grp., LLC, 23 Wn. App. 2d 387, 394, 515 P.3d 1004 (2022) (quoting Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc., 148 Wn. App. 400, 403, 200 P.3d 254 (2009)). Indeed, in Verbeek Properties, LLC v. GreenCo Environmental, Inc., 159 Wn. App. 82, 246 P.3d 205 (2010), we stated that whether a party's letter to another party to the arbitration had

> properly initiated an arbitration was not a question for the trial court to decide. The Uniform Arbitration Act envisions a limited role for courts. Heights, 148 Wn. App. at 403. That role is to decide whether or not there is an enforceable agreement to arbitrate. . . . The act does set forth procedures for initiating arbitration in RCW 7.04A.090. *But the question of compliance with these procedures must be left to the arbitrator.*

Verbeek Props., 159 Wn. App. at 87-88 (emphasis added). Thus, the factual questions of whether Joel's notice to Kathy complied with the notice procedures

14

and of whether McGlothin was Kathy's designated counsel at the time that Joel sent notice to him must be left to the arbitrator. See Verbeek Props., 159 Wn. App. at 87-88. It is clear that the arbitrator answered those questions in the affirmative.

In any event, the record clearly reflects that Kathy received proper notice from Joel of the arbitration proceeding. It is axiomatic that "notice or knowledge of an attorney, acquired during the time he or she is acting within the scope of his or her employment, is imputed to the client." 7 AM. JUR. 2D Attorneys at Law § 150 (citing Armstrong v. Ashley, 204 U.S. 272, 27 S. Ct. 270, 51 L. Ed. 482 (1907)). The relationship between a client and their attorney need not be formalized in a written contract but, rather, may be implied from the parties' conduct. In re Disciplinary Proceeding Against McGlothlen, 99 Wn.2d 515, 522, 663 P.2d 1330 (1983) (citing 7 AM.JUR.2D Attorneys at Law § 118 (1980); 8 JAMES HENRY WIGMORE, EVIDENCE § 2303, at 584 (rev. 1961)).

Here, Kathy does not contest that, both before and after McGlothin received notice of Joel's intent to submit the parties' QDRO dispute to arbitration in July 2022, she and McGlothin conducted themselves as if they were in an attorney-client relationship. For instance, McGlothin was identified as Kathy's attorney in the filing of her divorce petition in January 2021, as well as in the early stages of their litigation between January 2021 and December 2021. Moreover, McGlothin had represented Kathy in mediation and in submitting the CR 2A Stipulation and Agreement in December 2021, in the arbitration proceedings between December 2021 and March 2022, in the entry of the

Property Settlement Agreement in early April 2022, in the entry of the dissolution decree in late April 2022, and in the drafting and entry of Kathy's QDRO and the sending of that QDRO to the plan administrator in late April 2022. Moreover, after entry of the dissolution decree in late April 2022, McGlothin continued to represent Kathy in matters relating to the QDRO, as evidenced by a June 2022 letter to the plan administrator inquiring on Kathy's behalf as to the status of the QDRO that had been submitted for implementation.

Indeed, it was not until McGlothin was notified by letter of Joel's intention to submit their QDRO dispute to their designated arbitrator in July 2022 that McGlothin communicated to Joel that he was no longer Kathy's attorney of record.[15] Moreover, even after McGlothin represented to Joel's counsel that he was purportedly not representing Kathy in the arbitration, McGlothin continued to respond to e-mail communications regarding the ongoing arbitration, responded during arbitration to Joel's submission of the amended QDRO dispute to Judge Robinson, responded to Joel's superior court motion to confirm the arbitration award, filed appeals of both the superior court order confirming the award and the court order denying his motion to vacate the court's earlier order, and is now representing Kathy on appeal before this court.

Kathy's assertion is without merit. McGlothin's conduct at nearly all times during these proceedings strongly implies that he and Kathy were acting toward one another as if they were in an attorney-client relationship. Therefore, the

---

[15] Neither Kathy nor McGlothin contest that McGlothin received a copy of that letter.

notice that McGlothin received of Joel's submission of the amended QDRO dispute to arbitration was fairly imputed to Kathy.[16]

Kathy next asserts that she was substantially prejudiced by the purported failure to receive proper notice of the initiation of an arbitration proceeding. However, a party cannot be said to be prejudiced by having to do what they have already legally obligated themselves to do. In re Marriage of Hunter, 52 Wn. App. 265, 271, 758 P.2d 1019 (1988). As discussed herein, Judge Robinson's arbitration award did not result in a pecuniary change to Kathy's rights or obligations. Rather, Joel requested that Judge Robinson resolve a factual dispute in her designated role as fact finder. And Judge Robinson did so, approving the language of the amended QDRO as being consistent with their original agreement. Thus, the outcome of the arbitration proceeding did not result in prejudice to Kathy but, rather, resulted in her receipt of precisely that which she had originally agreed to receive.

Furthermore, the record reflects that, if Kathy had not received proper notice, she was clearly not substantially prejudiced by the absence thereof. Indeed, despite the purported absence of proper notice, Kathy—through her designated legal counsel—managed to successfully respond to Joel's letter

---

[16] Kathy also asserts that she did not receive proper notice because the provisions of RCW 7.04A.090 were not met. The pertinent provision reads as follows: "A person initiates an arbitration proceeding by giving notice in a record to the other parties to the agreement to arbitrate in the agreed manner between the parties . . . . The notice must describe the nature of the controversy and the remedy sought." RCW 7.04A.090(1). Kathy does not argue or meaningfully dispute that Joel's arbitration letter constituted a record sent to her in the parties' agreed manner, that McGlothin received the letter, and that Joel's letter described the nature of the controversy and the remedy that he sought from the arbitrator. Thus, Kathy's assertion fails.

submitting their dispute to arbitration and the arbitrator addressed Kathy's arguments in setting forth her arbitration award.[17]

Kathy fails to demonstrate that she did not receive proper notice of the initiation of an arbitration proceeding so as to substantially prejudice her rights. Accordingly, Kathy has not met her burden of establishing, pursuant to RCW 7.04A.230(1)(f), such a basis as a statutory ground for vacatur of the arbitration award.[18]

3

Kathy next asserts that the arbitration award should be vacated because the arbitrator committed misconduct contrary to RCW 7.04A.230(1)(b)(iii) and that such misconduct was prejudicial. This is so, Kathy contends, because the arbitrator did not provide her with certain arbitration procedures set forth in RCW 7.04A.150(2)-(4). Again, we disagree.

The pertinent misconduct provision reads as follows: "(1) Upon motion of a party to the arbitration proceeding, the court shall vacate an award if: . . . (b) There was: . . . (iii) Misconduct by an arbitrator prejudicing the rights of a party to

---

[17] On appeal, Kathy does not provide any argument or theory that, had she received the notification that she purportedly did not receive, she would have otherwise advanced in the arbitration proceeding. In the absence of such an argument, Kathy appears to be asserting that under RCW 7.04A.230(1)(f), in the event of an absence of notice, a party is per se substantially prejudiced. However, this provision does not explicitly set forth such a standard, and Kathy does not provide any argument or citation to legal authority in support of this proposition. RAP 10.3(a). Therefore, her assertion fails.

[18] Kathy also relies on CR 5(b)(4) and subsection (6) and RCW 2.44.030 to bolster her assertion that, because McGlothin was not her appointed representative during the amended QDRO dispute arbitration, any notice served upon him could not be imputed to her. Once again, Kathy's claim fails. Kathy cannot successfully bolster an assertion that, as discussed herein, has no merit. Her reliance on the above rules and statutory provision is unavailing.

the arbitration proceeding." RCW 7.04A.230. RCW 7.04A.150 reads, in pertinent, part, as follows:

> (2) The arbitrator may decide a request for summary disposition of a claim or particular issue by agreement of all interested parties or upon request of one party to the arbitration proceeding if that party gives notice to all other parties to the arbitration proceeding and the other parties have a reasonable opportunity to respond.
>
> (3) The arbitrator shall set a time and place for a hearing and give notice of the hearing not less than five days before the hearing. Unless a party to the arbitration proceeding interposes an objection to lack of or insufficiency of notice not later than the commencement of the hearing, the party's appearance at the hearing waives the objection. . . .
>
> (4) If an arbitrator orders a hearing under subsection (3) of this section, the parties to the arbitration proceeding are entitled to be heard, to present evidence material to the controversy, and to cross-examine witnesses appearing at the hearing.

Here, the record reflects that Kathy participated in the amended QDRO arbitration proceeding. She received notice of the proceeding and responded to Joel's submission of their amended QDRO dispute to arbitration. The record does not reflect that Kathy objected to the arbitrator's chosen procedures or requested any additional procedures pursuant to RCW 7.04A.150. The arbitrator's subsequent award included resolution of Kathy's arguments. The arbitrator's award was sent to each party.

Kathy's assertion lacks merit. Kathy does not contest on appeal that she had the opportunity to participate in the proceeding, did participate in the proceeding, did not object to the arbitrator's mode of proceeding, and did not request that the arbitrator provide any of the procedural protections set forth in RCW 7.04A.150(2)-(4). Moreover, Kathy provides no analysis or decisional

19

authority in support of her assertion that an absence of these procedural protections constitutes arbitral misconduct.[19] Additionally, Kathy does not support her assertion of prejudice arising from the purported misconduct with any argument, analysis, reference to the record, or decisional authority. Moreover, as discussed herein, the result of the amended QDRO arbitration proceeding was such that Kathy did not lose an interest in marital property to which she was entitled.

Thus, Kathy has demonstrated neither misconduct by the arbitrator nor prejudice resulting from any such purported misconduct. Accordingly, Kathy has not met her burden of establishing such a basis as a statutory ground for vacatur of the arbitration award pursuant to RCW 7.04A.230(1)(b)(iii).

As the party seeking to vacate an arbitration award on appeal, Kathy has the burden of establishing the existence of a statutory ground for doing so. Kathy does not carry her burden. Thus, Kathy does not establish the existence of a statutory basis upon which the superior court should have vacated the arbitration award. Accordingly, the superior court did not err by confirming the arbitration award.

---

[19] A brief survey of relevant decisional authority does not support Kathy's assertion of arbitrator misconduct. Compare Kempf v. Puryear, 87 Wn. App. 390, 393, 942 P.2d 375 (1997) (no arbitrator misconduct where arbitrator refused to hear certain evidence, refused cross-examination, did not swear in witnesses, and had ex parte contact, where participant was able to participate in the arbitration and did not object to the arbitrator's conduct); Martin v. Hydraulic Fishing Supply, Inc., 66 Wn. App. 370, 377, 832 P.2d 118 (1992) (no arbitrator misconduct where arbitrator did not postpone hearing in the absence of any request that hearing be continued), with Tombs v. Nw. Airlines, Inc., 83 Wn.2d 157, 162, 516 P.2d 1028 (1973) (arbitrator misconduct occurred when arbitrator denied participant any opportunity to participate in the arbitration); Harris, 73 Wn. App. at 200 (arbitrator misconduct occurred when two out of three arbitrators excluded third arbitrator from deliberations).

III

Kathy next asserts that the superior court erred by entering the amended QDRO. This is so, she contends, because the court lacked the authority to enter the amended QDRO. She bases this assertion on her claim that the court did not properly notify her of the proceeding and her claim that the court did not follow certain statutory requirements for modifying a judgment entry. We disagree in all respects.

A

Kathy first asserts that the superior court erred by correcting its previously entered QDRO with the language of the amended QDRO because, according to Kathy, the court did not have authority to alter its previously entered QDRO. We disagree.

We review a superior court's correction of clerical error under CR 60(a) for abuse of discretion. See Presidential Ests. Apt. Assocs. v. Barrett, 129 Wn.2d 320, 325, 917 P.2d 100 (1996). We additionally review a superior court's application of its inherent power to amend and reform its judgment entry for abuse of discretion. Litzell v. Hart, 96 Wash. 471, 477-78, 165 P. 393 (1917). A superior court abuses its discretion if its exercise of discretion is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

1

Kathy's assertion on appeal requires that we review the superior court's authority to correct its own judgment entries. On this topic, a well-respected authority on civil rules in Washington once wrote the following:

> To be distinguished from the vacation or setting aside of a judgment is the correction of a judgment because of a clerical error. This involves the matter of amending the judgment to make it correspond to the facts and law as actually decided and applied. It has long been established in Washington that a court has inherent power to modify a judgment entry to make it conform to the judgment actually rendered.

Philip A. Trautman, *Vacation and Correction of Judgments in Washington*, 35 WASH. L. REV. 505 (1960) (citing Pappas v. Taylor, 138 Wash. 31, 244 P. 393 (1926); Fisher v. Jackson, 120 Wash. 107, 206 P. 929 (1922); Litzell, 96 Wash. at 471; Shaughnessy v. Northland S.S. Co., 94 Wash. 325, 162 P. 546 (1917)).[20]

The leading case in Washington, per Professor Trautman,

> is O'Bryan v. American Investment & Improvement Co.[, 50 Wash. 371, 97 P. 241 (1908)]. A judgment was entered dismissing an action. Several months later a petition was filed to have the judgment corrected to read that the dismissal was without prejudice. An order to this effect had been entered in the minutes prior to the entry of the judgment. The supreme court reversed the

---

[20] In Bernard v. Abel, 156 F. 649 (9th Cir. 1907), the Ninth Circuit also recognized this well-established power:

> This principle is distinctly stated in Matheson's Adm'r v. Grant's Adm'r, [43 U.S. 263, 264,] 2 How. 263, 11 L. Ed. 261 [(1844)]. "It is a familiar doctrine," said the Supreme Court in Insurance Co. v. Boon, 95 U.S. 117, [5 Otto 117,] 24 L.[]Ed. 395 [(1977)], "that courts always have jurisdiction over their records to make them conform to what was actually done at the time; and, whatever may have been the rule announced in some of the old cases, the modern doctrine is that some orders and amendments may be made at a subsequent term, and directed to be entered, and become of record, as of a former term."
> This power is one to make the record speak the truth. It is salutary, and enables courts to prevent injustice through mere mistake or inadvertence of the judge, or counsel, or the clerk.

Abel, 156 F. at 652.

> trial court's denial of the requested relief and set forth the principle of inherent power, independent of any statute.

Trautman, supra, at 505 (footnote omitted). In O'Bryan, our Supreme Court instructed that the superior court's inherent power enables it "to so modify its judgment entry as to make it conform to the judgment actually entered at any time when to do so will not affect substantial rights of innocent third persons who have acted on the faith of the entry." 50 Wash. at 374. The court's ability to correct its judgment entries flows from the court's "inherent power to make its judgments conform to the truth." State ex rel. N. Pac. Railway Co. v. Superior Court for King County, 101 Wash. 144, 147, 172 P. 336 (1918); accord Huseby v. Kilgore, 32 Wn.2d 179, 192, 201 P.2d 148 (1948); Penchos v. Ranta, 22 Wn.2d 198, 206, 155 P.2d 277 (1945); Callihan v. Dep't of Lab. & Indus., 10 Wn. App. 153, 156-57, 516 P.2d 1073 (1973). Therefore, "if the court directs a certain judgment and another and different judgment is entered, this may be corrected." Trautman, supra, at 505 (citing McCaffrey v. Snapp, 95 Wash. 202, 207-08, 163 P. 406 (1917)).[21] See, e.g., Gordon v. Hultin, 146 Wash. 61, 65, 261 P. 785 (1927) ("The record renders it apparent that it was a mere clerical error in the drafting of the decree, which would have been corrected at that time had the court's attention been called to it by counsel."); Litzell, 96 Wash. at 477-78 (where original decree was not decree actually rendered and intended to be rendered by the court, court has inherent power to modify judgment entered to

---

[21] See also Bernard, 156 F. at 652-53 (noting that it is within the power of a court to amend its record of a judgment at a subsequent term to prevent injustice through a mistake or inadvertence of the judge or counsel or the clerk, as by correcting the wording of an order of dismissal which by mistake did not conform to the motion on which it was based).

23

make it conform to judgment actually rendered).  In correcting its judgment entry, the court may do so

> "on its own motion at any time. . . .  If the court directs judgment for one party, and the clerk enters it for another, or if the court directs a certain judgment and another and different judgment is entered, doubtless the court can order its correction when the matter is brought to its attention; but the error must appear on the face of the record; the court cannot, in this manner, correct or modify a judgment entered in accordance with its directions."

Huseby, 32 Wn.2d at 192 (quoting McCaffrey, 95 Wash. at 207-08).

In addition to the superior court's inherent power to correct its own judgment, the superior court has been granted similar authority, as set forth in CR 60(a).  See Trautman, supra, at 506 ("This inherent power is now embodied in Washington Rule of Pleading, Practice and Procedure 60.").

The rule reads as follows:

> **Clerical Mistakes**. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected *by the court* at *any time of its own initiative* or on the motion of any party and *after such notice, if any*, as the court orders.

CR 60(a) (emphasis added).

It must be noted, however, that "[a] distinction exists between a clerical error, which may be corrected under CR 60(a), and a judicial error, which may not."  In re Marriage of Stern, 68 Wn. App. 922, 927, 846 P.2d 1387 (1993).  Our Supreme Court has instructed that,

> [i]n deciding whether an error is "judicial" or "clerical," a reviewing court must ask itself whether the judgment, as amended, embodies the trial court's intention, as expressed in the record at trial.  Marchel v. Bunger, 13 Wn. App. 81, 84, 533 P.2d 406, review denied, 85 Wn.2d 1012 (1975).  If the answer to that question is

24

yes, it logically follows that the error is clerical in that the amended judgment merely corrects language that did not correctly convey the intention of the court, or supplies language that was inadvertently omitted from the original judgment.  If the answer to that question is no, however, the error is not clerical, and, therefore, must be judicial.  Thus, even though a trial court has the power to enter a judgment that differs from its oral ruling, once it enters a written judgment, it cannot, under CR 60(a), go back, rethink the case, and enter an amended judgment that does not find support in the trial court record.

Presidential Ests. Apt. Assocs., 129 Wn.2d at 326; accord Wilson v. Henkle, 45 Wn. App. 162, 167, 724 P.2d 1069 (1986).  Indeed,

[w]hether a trial court intended that a judgment *should have a certain result* is a matter involving legal analysis and is beyond the scope of CR 60(a).  The rule is limited to situations where there is a question whether a trial court intended to enter the judgment that was actually entered.

Presidential Ests. Apt. Assocs., 129 Wn.2d at 326 n.5.[22]

We have reiterated that CR 60(a) provides that the court may, of its own initiative, correct a clerical error at any time and without any notice to the affected parties.  Wilson, 45 Wn. App. at 167 ("CR 60(a) authorizes *on the court's own motion* the correction of clerical mistakes" (emphasis added) (citing Entranco Eng'rs v. Envirodyne, Inc., 34 Wn. App. 503, 507, 662 P.2d 73 (1983); Krueger Eng'g, Inc. v. Sessums, 26 Wn. App. 721, 723, 615 P.2d 502 (1980))); DeVogel v. Padilla, 22 Wn. App. 2d 39, 56, 509 P.3d 832 (2022) ("CR 60(a) provides that '[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court *at any time*'" (emphasis added)); Wilson, 45 Wn. App. at 167 ("Such corrections may be

---

[22] See, e.g., Barough v. Israel, 46 Wn.2d 327, 332-33, 281 P.2d 238 (1955) (concluding that predecessor civil rule to CR 60(a) granted trial court authority to correct clerical mistake in description of the real property awarded to a party in divorce decree).

25

made without notice to the parties affected" (citing Barough v. Israel, 46 Wn.2d 327, 333, 281 P.2d 238 (1955))); see also Trautman, supra, at 506.  Accordingly, as pertinent here, under CR 60(a), a clerical mistake or error in a court's recorded judgment may be corrected "by the court" "at *any* time" "*of its own initiative*" "after such notice, *if any*, as the court orders."[23] (Emphasis added.)

Here, the superior court's judgment incorporated the parties' marital property division as awarded to them in arbitration—including the agreement that Kathy would receive Joel's contributions to his employer's 401(k) plan and that Joel would retain his employer's contributions thereto.  Thereafter, the court entered the judgment record at issue—the QDRO drafted by Kathy's lawyer— unaware that the QDRO did not reflect the court's judgment.  "In this situation, the court was a victim of a misplaced confidence in the attorney, and the decree was not what [the court] intended to sign."  In re Estate of Kramer v. Nelson, 49 Wn.2d 829, 830-31, 307 P.2d 274 (1957).

Later, when Joel asked the court to confirm the arbitration award and enter the amended QDRO, the court became aware of the discrepancy between its judgment and its QDRO.  The court then reviewed the arbitration award, confirmed the award, and corrected its QDRO.

---

[23] We interpret the word "any," as set forth in CR 60(a) broadly.  See Thomas Ctr. Owners Ass'n v. Robert E. Thomas Tr., 20 Wn. App. 2d 690, 703, 501 P.3d 608, review denied, 199 Wn.2d 1014 (2022) ("In plain English, 'any and all' means any and all."); Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc., 168 Wn. App. 86, 101, 285 P.3d 70 (2012) ("We have previously determined that the phrase 'any and all claims' is to be given its ordinary meaning." (citing MacLean Townhomes, LLC v. Am. 1st Roofing & Builders, Inc., 133 Wn. App. 828, 831, 138 P.3d 155 (2006))).  Thus, in CR 60(a), "any" means any.

2

In correcting a clerical mistake in its QDRO, the court appeared to rely on its authority under CR 60(a) or under its inherent power. Regardless of the approach elected by the court, it plainly had the authority to do so.

If the superior court relied upon its CR 60(a) authority to correct its QDRO, then the superior court did not err.

In entering the amended QDRO, the court had authority under CR 60(a) to correct a clerical error in its previously entered QDRO when that error resulted in a writing that was inconsistent with its judgment. As discussed herein, the judgment of the court in this matter had, in essence, incorporated the party's original arbitration award.[24] It was therefore the court's plain intention that its division of the parties' marital property reflect the marital property division agreement arising out of their arbitration. However, the court later entered Kathy's proposed QDRO, an order that, unbeknownst to the court at the time, purported to divide the parties' marital property in a manner inconsistent with their original agreement.[25] When this issue was brought to the court's attention— after the parties' arbitrator had approved the amended QDRO as being consistent with their original agreement and after the court had confirmed the arbitration award—the court entered the amended QDRO to correct the

---

[24] The parties' arbitration resulted in an agreement regarding their marital property division. Their agreement was later memorialized in their initial and subsequent writings, which were incorporated as part of the court's judgment. The court's incorporation of the parties' writings was recorded in the court's dissolution decree.

[25] Indeed, had this issue been brought to the court's attention by Joel's counsel at the time of entry of Kathy's QDRO, the court might well have instructed the parties to take the factual dispute to their arbitrator to address it.

unintended mistake set forth in its previously entered QDRO. See Presidential Ests. Apt. Assocs., 129 Wn.2d at 326 n.5. This was plainly not an attempted modification of judicial error but, rather, a correction of a clerical mistake.[26]

Given that the superior court was correcting a clerical error in its own judgment record, the court had the authority under CR 60(a) to do so on its own initiative, at any time, and without any notice to an affected party. Therefore, under CR 60(a), the court had the authority to correct its QDRO, one of its judgment entries, and to do so in reliance on its own initiative and timing, and without needing to provide notice thereof to the parties.[27] Thus, had the court, under its CR (60)(a) authority, corrected the QDRO by substituting the previously entered QDRO for the amended QDRO, the superior court would not have abused its discretion in so doing.

If the superior court relied on its inherent power to correct its QDRO, then the court also did not err. As set forth herein, it is well-established that the superior court has inherent power "to so modify its judgment entry as to make it conform to the judgment actually entered at any time when to do so will not affect substantial rights of innocent third persons who have acted on the faith of the entry." O'Bryan, 50 Wash. at 374; accord Huseby, 32 Wn.2d at 192; Penchos,

---

[26] Even if we were to conclude that the court's change was not clerical in nature, we would nevertheless conclude that the superior court did not err. As we stated in DeVogel v. Padilla, "even if we agree that the court's amendment was not clerical, it corrects an 'error[ ] . . . arising from oversight or omission,' which is permitted under CR 60(a). Therefore, the court did not err under CR 60 by amending the order." 22 Wn. App. 2d at 57 (alteration in original). Thus, even if this error was not a clerical change under CR 60(a), the court's entry of the amended QDRO plainly corrected an error arising from oversight or omission in one of its recorded judgments, which CR 60(a) permits.

[27] Nevertheless, as discussed below, the court provided the parties with appropriate due process protections during this proceeding.

22 Wn.2d at 206; Gordon, 146 Wash. at 65; Pappas, 138 Wash. at 33; Fisher, 120 Wash. at 109; Superior Court for King County, 101 Wash. at 147; Litzell, 96 Wash. at 477-78; McCaffrey, 95 Wash. at 207-08; Shaughnessy, 94 Wash. at 337-38; Callihan, 10 Wn. App. at 156-57. This inherent power permits the court to correct an error in its judgment record on its own motion at any time and without notice to the affected parties. See, e.g., Huseby, 32 Wn.2d at 192; Gordon, 146 Wash. at 65. See also Trautman, supra, at 505-06.

As analyzed herein, the superior court initiated a correction of its QDRO so as to make it conform with the judgment it actually rendered regarding the parties' marital property division. Moreover, the record does not reflect that the court's initiative affected any substantial rights of innocent third parties who acted on the faith of the QDRO's entry by the superior court. Indeed, the previously entered QDRO in question was never effectuated due to the rejection of the QDRO authored by Kathy's attorney by the plan administrator. Thus, had the court, in reliance on its inherent power, corrected its QDRO by replacing Kathy's proposed QDRO with the amended QDRO, it would not have abused its discretion in so doing.

Accordingly, the superior court did not err by correcting the amended QDRO, its judgment record, under either CR 60(a) or its inherent authority.[28]

---

[28] Kathy relies on In re Marriage of Knutson, 114 Wn. App. 866, 60 P.3d 681 (2003), for the proposition that, because a QDRO is a final order, the superior court did not have authority to amend or otherwise modify the QDRO. Kathy is mistaken. Knutson involved a superior court vacating a QDRO and modifying a dissolution decree under CR 60(b) on the basis that, after entry of its decree, the economy had changed, rendering the parties' original agreement unfair. Knutson does not support Kathy's assertion. Here, the superior court neither vacated a QDRO nor amended the dissolution decree under CR 60(b), nor relied on factual findings that did not

B

Kathy next asserts that the superior court erred by not providing her notice of a correction to the QDRO. We disagree.

As discussed herein, it is well established that the court, under its inherent power or under CR 60(a), need not provide notice to affected parties of a correction to its own record. CR 60(a); Barough, 46 Wn.2d at 332-33; Huseby, 32 Wn.2d at 192; Gordon, 146 Wash. at 65; Wilson, 45 Wn. App. at 167; Entranco Eng'rs, 34 Wn. App. at 507; Krueger Eng'g, Inc., 26 Wn. App. at 723; DeVogel, 22 Wn. App. 2d at 56; see also Trautman, supra, at 506. Because the superior court was merely correcting a mistake in its judgment record, no notice to any affected party—including Kathy—was required.

Kathy nevertheless contends that she should prevail on appeal because she did not receive proper notice of the court's proceeding to correct its previously entered QDRO, contrary to CR 60(e). Because Kathy received

---

form part of the court's original judgment. Rather, the superior court corrected the QDRO pursuant to CR 60(a) and its inherent authority, which it could do at any time, on its own initiative.
> In taking this initiative, the superior court could rely on its implied powers to do so: When no proceeding is prescribed, a court may draw from its implied powers . . . :
>> "When jurisdiction is, by the Constitution of this state, or by statute, conferred on a court or judicial officer all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the laws."

In re Marriage of Cox, 20 Wn. App. 2d 594, 598-99, 501 P.3d 155 (2021) (quoting RCW 2.28.150), review denied, 199 Wn.2d 1013 (2022). We have held that RCW 2.28.150 "is sufficiently broad to supply any deficiency of procedure which has been omitted in the primary grant of jurisdiction." State ex rel. McCool v. Small Claims Court of Jefferson County Dist. Court, 12 Wn. App. 799, 801, 532 P.2d 1191 (1975) (citing State ex rel. McAvoy v. Gilliam, 60 Wash. 420, 111 P. 401 (1910)). The court's process, discussed herein, appears to us most conformable to the spirit of the law. Cox, 20 Wn. App. 2d at 598.

minimum due process protections in the proceeding and the court's correction of its judgment entry was not a vacation of a judgment, we disagree.

By its terms, CR 60(e) applies only to a proceeding to vacate a judgment. Such a request is governed by CR 60(b). CR 60(e) does not apply. Kathy's contention to the contrary is unpersuasive.

In addition, although no notice was required to act to correct its judgment entry, here, in fact, the notice provided met the minimum requirements of due process. In re Marriage of Campbell, 37 Wn. App. 840, 843, 683 P.2d 604 (1984). As a result of Joel's motion and briefing filed before the superior court, both parties were aware of the subject matter and purpose of the proceeding and of the dispute in question—that the proceeding regarded the court's previously entered QDRO and that Joel sought the entry of a QDRO that was consistent with the parties' original agreement as incorporated into the court's judgment. Both parties had the opportunity to participate, in the form of briefing and a response thereto—and both parties did participate by filing such submissions.

Thus, the superior court, acting either under its inherent power or under CR 60(a), although not required to provide notice to Kathy of its initiative correcting its own judgment record, nevertheless provided the parties with minimum due process protections during the proceeding.

Accordingly, the superior court did not err.

C

Kathy next asserts that the superior court did not comply with the mandate of RCW 26.09.170(1). This is so, Kathy contends, because the court modified

the provisions of the parties' property disposition without finding the existence of conditions that justified doing so under the laws of this state. We disagree.

RCW 26.09.170(1) sets forth, in pertinent part, that "[t]he provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." Contrary to Kathy's assertion, this provision is inapplicable here.

As discussed herein, the court did not substantially modify the parties' property division but, rather, corrected a clerical error in its own judgment record so that it correctly conveyed the court's intention. The court's correction of its judgment record did not change the parties' original marital property division agreement as incorporated into the court's judgment.

Regardless, under a broad reading of the statute—in which reopening of a judgment is read to include correction of a court's judgment entry—the superior court found the existence of conditions that justified modifying—i.e., correcting—the judgment record under the laws of this state. In confirming the arbitration award, the superior court became apprised of an inconsistency between its judgment and its judgment entry, the previously entered QDRO. The superior court found that its QDRO did not align with its original intent but that the amended QDRO did. Having made such findings, the court entered the amended QDRO, in reliance on either CR 60(a) or its inherent powers. By becoming aware of the inconsistency in its judgment record upon confirming the arbitration award, the court apprised itself of the conditions necessary to correct

its own judgment. The superior court did not err in so doing.[29] Thus, the superior court did not contravene RCW 26.09.170(1).

Accordingly, the superior court did not err by correcting the previously entered QDRO by entering the amended QDRO.

IV

On appeal, Joel requests an award of attorney fees because he is "a prevailing party to a contested judicial proceeding." RAP 18.1(a). Kathy also requests such an award, in the event that she prevails on appeal. The parties therefore appear to agree that the prevailing party on this appeal is entitled to an award of attorney fees. Because Joel is the prevailing party in this instance, we grant Joel an award of reasonable attorney fees.[30]

---

[29] Furthermore, even if the court had erred, any error would have been harmless. As discussed herein, Joel did not seek a change to his and Kathy's original property agreement and the relief granted by the court did not result in any pecuniary loss to Kathy. See In re Marriage of Irwin, 64 Wn. App. 38, 64, 822 P.2d 797 (1992) (holding that, despite trial court's error in granting relief to modify a divorce decree under CR 60(b)(11), any error under RCW 26.09.170(1) was harmless because the relief sought was not "a change in the property award itself" and the relief granted "did not result in any pecuniary loss" to the other party). Thus, if any error had occurred, it would have been harmless.

Kathy also relies on In re Marriage of Thompson, 97 Wn. App. 873, 988 P.2d 499 (1999), to support her proposition that the superior court improperly modified the parties' marital property division, contrary to RCW 26.09.170(1). Kathy's reliance is unavailing. Unlike the court in Thompson, which issued a postdecree enforcement order that had substantially altered the parties' marital property division, the superior court herein merely corrected a judgment entry so that it reflected Kathy's and Joel's original marital property division as incorporated into the court's judgment. Kathy's assertion fails.

[30] Kathy also assigns error to the following: the trial court's grant of attorney fees and costs to Joel pursuant to RCW 7.04A.250(3), the trial court's finding that she was intransigent, the trial court's finding that she did not file a motion to vacate the arbitration award, the trial court's establishment of personal jurisdiction over her when it confirmed the arbitration award, and the arbitrator's issuance of attorney fees to Joel. Kathy does not support these assignments of error with adequate analysis, argument, authority, or references to the record. Accordingly, we do not consider them. RAP 10.3(a)(4), (6); State v. Olson, 126 Wn.2d 315, 320-21, 893 P.2d 629 (1995)).

Additionally, consolidated with this appeal is Kathy's appeal from the superior court's order denying her motion to vacate the court's order, discussed herein, confirming the arbitration award and entering the amended QDRO. On appeal, she asserts several assignments of error pertaining to the superior court's denial of her motion to vacate that order. However, apart from identifying these assignments of error, her briefing provides no analysis, argument, authority, or

V

Two pending motions filed by Kathy remain for our consideration.

First, we address Kathy's motion for a continuance to file a reply brief, her third such motion. We previously granted Kathy's three motions for a continuance to file her opening brief, despite these motions occurring on the day that her brief was due. Kathy was later notified that her reply brief was due on September 27, 2023 and that this matter was set for oral argument on November 15, 2023. On September 26, the day before her reply brief was due, Kathy submitted a motion for an extension of the time to file a reply brief and requested a 30-day extension—until October 27. A commissioner of the court granted this request. However, on October 27, Kathy did not file a reply brief. Instead, she filed her second request for an extension of time to file her reply brief. Three days later, a commissioner of this court denied Kathy's request, ruling that Kathy's

> [r]eply brief remains overdue, originally due September 27, 2023, despite an extension granted to October 27, 2023. On October 27, 2023, appellant's counsel filed a motion to accept late filing of reply brief, stating counsel "will be able to file Reply Brief today." As of this ruling (October 30, 2023), a reply brief has not been filed. Oral argument has been scheduled for November 15, 2023.
> At this time, the motion to accept late filing of reply brief is denied. This case will be considered without a reply brief.

---

references to the record to support the existence of these purported errors. Thus, she has not adequately supported these assignments of error. Accordingly, we do not consider them. RAP 10.3(a)(4), (6).

34

Kathy did not file a motion to modify the commissioner's order. Instead, on that same day, she filed another motion seeking an extension of time to file a reply brief—her third such motion. She subsequently filed a proposed reply brief.

We deny Kathy's motions. This matter has been considered without a reply brief.[31]

We next address Kathy's November 16, 2023 motion, captioned as a "Motion to Accept Supplemental Brief to Address Panel Questions at Oral Argument." Kathy predicates this motion on RAP 10.1(h), which provides that "[t]he appellate court may in a particular case, on its own motion or on motion of a party, authorize or direct the filing of briefs on the merits other than those listed in this rule." Kathy's motion is denied. We have reviewed her motion to file a supplemental brief. We decline to authorize such a filing.

Affirmed.

_Dugn, J._

---

[31] We have nevertheless noted Kathy's mention of a recent decision from this court, In re Marriage of Gudnason, No. 83845-8-I (Wash. Ct. App. Oct. 16, 2023) (unpublished) https://www.courts.wa.gov/opinions/pdf/838458.pdf. In this way, we regard Kathy's proposed submission as a statement of additional authorities, which we have considered without argument. RAP 10.8. We have considered Gudnason as part of our decision in this matter.

WE CONCUR:

_Birk, J._ _Chung, J._